

FILED
DISTRICT COURT OF GUAM

NOV 2 4 2003

MARY L. M. MORAN
CLERK OF COURT

**Michael Jr. G. Laguana, Pro' Se,**
**c/o Department of Corrections (ACF)**
**P.O. Box 3236**
**Hagatna, Guam    96932**
**Tel: (671) 734-3981 thru 9**



# UNITED STATES DISTRICT COURT

# District Court of Guam

## TERRITORY OF GUAM

| | |
|---|---|
| Michael Jr. G. Laguana,<br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Frank Ishizaki, Director,<br>Francisco B. Crisostomo, Warden,<br>Alan San Nicolas, Corporal,<br>Raymond Quichocho, Correctional Officer,<br>Vincent Bamba, Correctional Officer,<br>Ed Perez, Correctional Officer, at the<br>Department of Corrections, in their<br>individual and official capacities,<br>　　　　　　　　　Defendants. | Civil Case No. CV **03-00040**<br><br><br>**COMPLAINT** |

## CIVIL COMPLAINT
## WITH A JURY DEMAND

This is a section 1983 action filed by Michael Jr. G. Laguana, an inmate at the Department of Corrections, alleging violation of his Constitutional rights and seeking money damages, declaratory judgment, and injunctive relief.  The Plaintiff humbly requests a trial by jury.

# JURISDICTION

1.      This is a Civil Rights action under 42 U.S.C. Section 1983. This court has jurisdiction under 28 U.S.C. section 1343. Plaintiff also invokes the pendent jurisdiction of this court.

# PARTIES

2.      Plaintiff *Michael Jr. G. Laguana* is a Citizen of the United States and is presently incarcerated at the Department of Corrections in Mangilao Guam.

3.      Defendant *Frank Ishizaki* is the Director of the Department of Corrections (DOC) and is ultimately responsible for the operation and management of DOC. He is responsible for the training and supervision of the Correctional personnel employed at DOC. He is sued in his individual and official capacities.

4.      Defendant *Francisco B. Crisostomo* is the Warden of the Department of Corrections (DOC) and is responsible for the operation and management of the Adult Correctional Facility of DOC. He is an agent of Defendant Ishizaki, and he is sued in his individual and official capacities.

5.      Defendant *Alan San Nicolas*, an agent of Defendants Ishizaki and Crisostomo, is a Corporal at the Department of Corrections (DOC), a Unit Supervisor for the Halfway House at DOC, is the Chairman for the Disciplinary Hearing Board at DOC, and is the Officer-In-Charge of the 7am to 3pm shift of Correctional personnel for the Halfway House at DOC. He is sued in his individual and official capacities.

6. Defendant *Raymond Quichocho*, an agent of Defendants Ishizaki and Crisostomo, a subordinate of Defendant San Nicolas, is a Correctional Officer at the Department of Corrections (DOC). He is sued in his individual and official capacities.

7. Defendant *Vincent Bamba*, an agent of Defendants Ishizaki and Crisostomo, a subordinate of Defendant San Nicolas, is a Correctional Officer at the Department of Corrections (DOC). He is sued in his individual and official capacities.

8. Defendant *Ed Perez*, an agent of Defendants Ishizaki and Crisostomo, a subordinate of Defendant San Nicolas, is a Correctional Officer at the Department of Corrections (DOC). He is sued in his individual and official capacities.

9. All Defendants have acted under *Color of Law* during all times relevant to this complaint.

10. All Defendants have no excuse for not knowing all rules and regulations of the Department of Corrections.

   (**See** **Executive Order 88-19 Chapter 11, PERSONNEL, Article 2 EMPLOYEES, Section 11.4. RESPONSIBILITY OF EMPLOYEES**).

# FACTS

11. Previously on or about December 2001 and January 2002, Plaintiff personally informed his Caseworker, Mark Perez, that he (Plaintiff) is encountering animus treatment and harassment from Defendant Alan San Nicolas and other Prison Officials who are assigned to the Halfway House (Post#9).

12.    Previously on or about December 2001 and January 2002, Plaintiff filed grievances, or otherwise provided notification to former Director of Corrections Angel Sablan (via privilege mail and Post#9 Unit pay phone) stating that he (Plaintiff) is encountering animus treatment and harassment from Defendant Alan San Nicolas and other Prison Officials who are assigned to Post#9. Plaintiff also filed grievance or otherwise provided notification (raising the same concerns that was brought to the attention of Angel Sablan) to former Acting Director Ted Lewis on or about September or October of 2002.

13.    Previously on or about September or October 2002 Plaintiff filed a grievance, or otherwise provided notification (via privilege mail) to Defendant Francisco B. Crisostomo stating that Plaintiff wishes to remain at the Minimum-In Facility (Post#24) and refuses to be transferred to the Halfway House _ in fear that Plaintiff will again reap animus treatment or repercussions from Defendant San Nicolas and certain Prison Officials (who are still assigned to the Halfway House), because of the animosity that Plaintiff believes still exist amongst them.

14.    Previously on or about October 2002 Plaintiff verbally spoke with Defendant Francisco B. Crisostomo (via Post#24 Unit Control telephone) and told Defendant Crisostomo that Plaintiff wishes to remain at the Minimum-In Facility (Post#24)_ that while temporarily housed at Post#24 Plaintiff will obtain all rights and privileges of "Minimum-Out"_ that Plaintiff refuses to be transferred to the Halfway House in fear of reaping again animus treatment or repercussions from Defendant Alan San Nicolas and certain Prison Officials, and would only accept the transfer in the event that these Prison Officials in particular are reassigned.

15. Defendant Francisco B. Crisostomo approved the Plaintiff's request and assured the Plaintiff that he will remain at the Minimum-In Facility (Post#24).

16. On or about October or November 2002, Defendant Francisco B. Crisostomo had Plaintiff transferred to the Halfway House against his will.

17. On or about August 3, 2003 (Sunday morning) Plaintiff addressed a particular problem to Defendant Ed Perez which needed to be resolved.

18. On or about August 3, 2003 (Sunday morning) Defendant Ed Perez assured the Plaintiff that the problem addressed will be resolved.

19. Defendant Ed Perez having knowledge of the Plaintiff's problem, neglected his ministerial duties when he failed to take preventive and corrective measures to resolve the Plaintiff's problem.

20. On or about 0640hrs. on August 5, 2003 Defendant Vincent Bamba verbally counseled the Plaintiff at the exterior weight room area of the Halfway House.

21. On or about 0640hrs. on August 5, 2003 Defendant Vincent Bamba assured the Plaintiff that he will resolve the Plaintiff's problem.

22. On or about 0845hrs. on August 5, 2003 Plaintiff was handcuffed and placed on Pre-Hearing Detention because Defendant Vincent Bamba neglected his ministerial duties when he failed to take preventive and corrective measures as he said he would.

23. On or about 0815hrs. on August 5, 2003 Defendant Alan San Nicolas questioned, or otherwise counseled Plaintiff about an Informational Report submitted by two of his Correctional Officers, (COI) R. I. Quichocho and (COI) M. A. Reyes.

24. On or about 0845hrs. on August 5, 2003 Defendant Alan San Nicolas initiated the Plaintiff's charging process.

25. On or about 0845hrs. on August 5, 2003 Defendant Alan San Nicolas ordered Plaintiff to be handcuffed and placed on Pre-Hearing Detention.

26. On or about 0840hrs. on August 6, 2003 Defendant Alan San Nicolas investigated the Plaintiff's Institutional Case.

27. On or about 1000hrs. on August 6, 2003 Defendant Alan San Nicolas acted as the Decision Maker in the Plaintiff's Institutional Case.

28. On or about 1023hrs. on August 8, 2003 Defendant Alan San Nicolas sat as the Chairman of the Disciplinary Hearing Board (DHB) and presided over the Plaintiff's Institutional Case.

29. On or about 1023hrs. on August 8, 2003 Defendant Raymond Quichocho unlawfully acted in excess of jurisdiction by being the Presenting Staff/Personnel in the Plaintiff's Institutional Case.

30. On or about 1920hrs. on August 11, 2003 Plaintiff filed an Administrative Appeal to Defendant Frank Ishizaki (Director of Corrections).

31. Defendant Frank Ishizaki neglected his ministerial duties when he failed to answer Plaintiff's Administrative DHB Appeal in a timely manner in accordance with Executive Order 94-19.

32. On August 19, 2002 Plaintiff filed a Writ of Habeas Corpus in the Superior Court of Guam for due process violations, identical violations raised here in this complaint against Defendant Ishizaki. Defendant Ishizaki who was the respondent in Plaintiff's "Writ," [in place of former Director of Corrections Angel Sablan], reasoned with the Plaintiff and agreed to compensate and restore all points to the Plaintiff _ in return to dismiss the Writ of Habeas Corpus. Based on the agreement made between Plaintiff and Defendant Ishizaki, Plaintiff's Writ of Habeas Corpus was dismissed.
**(See Michael Jr. Gumataotao Laguana v. Angel A. R. Sablan, Dismissal Order SP183-02).**

33. The acts complained in this section 1983 action concerns Constitutional rights violations (The right to due process of law _ The right to be free from cruel and unusual punishment), Violation of Federal Constitutional requirements, Violation of the right to humane treatment, The right to equal protection of the law, The right to be protected from uneven or discriminatory treatment, Violation of procedural requirements under local law or rules, Deliberate indifference, Abuse of discretion, Negligent performance of ministerial duties, Unlawful act in excess of jurisdiction, and Breach of duty in the creation of a protected liberty interest and due process interest.

# CLAIMS
# FIRST CAUSE OF ACTION

34. The actions of Defendant Francisco B. Crisostomo stated in paragraphs 13 thru 16 denied Plaintiff the *Constitutional right* to be free from cruel and unusual punishment, the *Constitutional right* to equal protection of the law, and the *right* to protection from uneven or discriminatory treatment.

35. The actions of Defendant Crisostomo stated in paragraphs 13 thru 16 violated existing local law *Executive Order 94-19*.

    **(See Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, A; Executive Order 94-19 Chapter 6, Security and Control, Section 6.1. General Provisions; Executive Order 94-19 Chapter 1, Administrative Provisions, Section 1.3. Purpose).**

36. Defendant Crisostomo in the *"negligent performance of his ministerial duties,"* unlawfully acted in *"Deliberate Indifference"* and violated the Plaintiff's *right* to impartial and fair humane treatment because:

    A) Plaintiff had filed grievance (via privilege mail), or otherwise provided notification on or about September or October 2002 to Defendant Crisostomo, requesting to remain at the Minimum-In Facility (Post#24) because of prior animus treatment and animosity between plaintiff and Defendant Alan San Nicolas, et al.;

    B) On or about October 21, 2002 Plaintiff verbally told Defendant Crisostomo (via unit control telephone of Post#24) that Plaintiff refuses to transfer to the Halfway House (Post#9), in fear that Plaintiff will again reap animus treatment or repercussions from Defendant

Alan San Nicolas, et al. _ and would only accept the transfer if Defendant San Nicolas, et al., would be reassigned;

C) Defendant Crisostomo is aware and has knowledge of Plaintiff's conflict of interest;

D) Defendant Crisostomo approved the Plaintiff's request considering the conflict of interest between Plaintiff and Defendant San Nicolas, et al.;

E) Defendant Crisostomo having full knowledge of the Plaintiff's conflict of interest abused his discretion when he went against his word, and had Plaintiff transferred against his will, jepordizing the Plaintiff's safety, security, and well-being.

# **SECOND CAUSE OF ACTION**

37.  The actions of Defendants Ed Perez and Vincent Bamba stated in paragraphs 17 thru 22 denied Plaintiff the *Constitutional right* to be free from cruel and unusual punishment, the *Constitutional right* to equal protection of the law, the *right* to humane treatment, and the *right* to protection from uneven or discriminatory treatment.

38.  The actions of Defendants Perez and Bamba stated in paragraphs 17 thru 22 violated existing local law *Executive Order 94-19*.

**(See Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, A; Executive Order 94-19 Chapter 6, Security and Control, Section 6.1. General Provisions; Executive Order 94-19 Chapter 1, Administrative Provisions, Section 1.3. Purpose).**

39. Defendants Perez and Bamba in the *"negligent performance of their ministerial duties,"* unlawfully acted in *"Deliberate Indifference"* and violated the Plaintiff's *right* to impartial and fair humane treatment because:

      A) Plaintiff was not provided with the right to a sufficient amount of uninterrupted sleep because of high disturbing noise levels;

      B) These problems were brought to the attention of Defendants Perez and Bamba;

      C) Defendants Perez and Bamba having knowledge of the Plaintiff's problem, assured the Plaintiff that the problem would be resolved;

      D) Defendants Perez and Bamba although having knowledge of the Plaintiff's problem, ignored the fact and failed to take preventive and corrective measures as they said they would;

      E) The Plaintiff is now suffering unconstitutional punishment because of Defendants Perez and Bamba's failure to take preventive and corrective measures.

# THIRD CAUSE OF ACTION

40.     The actions of Defendant Alan San Nicolas stated in paragraphs 23 thru 28 denied Plaintiff the *Constitutional right* to be free from cruel and unusual punishment, the *Constitutional right* to equal protection of the law, and the *right* to protection from uneven or discriminatory treatment.

41.     The actions of Defendant San Nicolas stated in paragraphs 23 thru 28 violated existing local law *Executive Order 94-19.*

**(See   Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, A and B; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.26. Right to make statement and present evidence; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.1. General Provisions; Executive Order 94-19 Chapter 1, Administrative Provisions, Section 1.3. Purpose).**

42.     Plaintiff alleges that the actions of Defendant San Nicolas stated in paragraphs 23 thru 28 is in itself a conflict of interest and constitutes a violation of *Federal Constitutional Requirements* because:

A) Defendant San Nicolas failed to conduct the Plaintiff's Pre-Hearing Investigation properly,

B) Defendant San Nicolas being a conflict of interest in the Plaintiff's Institutional case, is a cause for the Plaintiff's Pre-Hearing investigation to be hindered as a result thereof.

43. Plaintiff alleges that Defendant San Nicolas *abused his discretion* in the act of *"Deliberate Indifference"* when he maliciously acted in a torturous manner towards the Plaintiff and vindictively had a wanton intent to inflict mental pain, emotional stress, and physical suffering upon the Plaintiff when:

> A) Defendant San Nicolas hideously isolated the incident to quietly gain ultimate control of the Plaintiff's Institutional case.

> B) Defendant San Nicolas solely handled and participated in every part of the Plaintiff's Institutional case.

# **FOURTH CAUSE OF ACTION**

44. The actions of Defendant Raymond Quichocho stated in paragraph 29 denied Plaintiff the *Constitutional right* to due process of law, the *Constitutional right* to equal protection of the law, and the *right* to protection from uneven or discriminatory treatment.

45. The actions of Defendant Raymond Quichocho stated in paragraph 29 violated existing local law *Executive Order 94-19*.

**(See Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, A; Executive Order 94-19 Chapter 1, Administrative Provisions, Section 1.3. Purpose; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.15. Receipt of Charges against inmate; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.24. Presenting Staff; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, B; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.1. General Provisions).**

46. Plaintiff alleges that Defendant Quichocho's action was an *unlawful act in excess of jurisdiction.*

# FIFTH CAUSE OF ACTION

47. The actions of Defendant Frank Ishizaki stated in paragraph 31 denied Plaintiff the *Constitutional right* to due process of law, the *Constitutional right* to equal protection of the law, and the *right* to protection from uneven or discriminatory treatment.

48. The actions of Defendant Ishizaki stated in paragraph 31 violated existing local law *Executive Order 94-19.*

   **(See Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, A; Executive Order 94-19 Chapter 1, Administrative Provisions, Section 1.3. Purpose; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.2. Inmate Rights and Responsibilities, B; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.1. General Provisions; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.30. Appeals, B; Executive Order 94-19 Chapter 3, Inmate Rules and Discipline, Section 3.32. Time for appeals, B).**

# **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests this *Honorable Court* grant the following relief:

**A.**     **Issue an injunction ordering that Defendant(s) or their Agent(s):**

    1) Immediately restore Plaintiff to his original Classification Status "Minimum-Out;"

    2) Immediately transfer Plaintiff back to his original housing unit "Halfway House (Post#9);"

    3) Immediately expunge Plaintiff's record;

    4) Immediately reinstate all programs and privileges of Plaintiff;

    5) Immediately reassign all Defendants assigned to the Halfway House upon returning the Plaintiff back to the Halfway House;

    6) Refrain from retaliating against Plaintiff for exercising his Constitutional rights, and any form of retaliation will constitute grounds for possible charges to be brought upon the Defendant who initiated the retaliation;

    7) Total all Plaintiff's Work Credit Hours and Education Release Class Hours which he would have earned (from confinement date to present), to be exhausted in the form of Weekend Homefurlough [Plaintiff leaves 6pm. Friday evening and returns 6pm. Sunday evening]. Computation formula will be:

        i) Work Credit Hours = (8hrs. a day x's 5 days a week) excluding weekends and holidays.

        ii) Education Release Class Hours = (1 ½ class hours x's 4 days a week) excluding weekends and holidays

iii) Total Homefurlough Hours = (Total W/C Hours + Total Education Class Hours + 438 current Homefurlough hours).

**B.** **Grant Mental Anguish and Punitive Damages in the following amount:**

    1) $10,000.00 against Defendant Frank Ishizaki;

    2) $10,000.00 against Defendant Francisco B. Crisostomo;

    3) $12,000.00 against Defendant Alan San Nicolas;

    4) $10,000.00 against Defendant Raymond Quichocho;

    5) $10,000.00 against Defendant Vincent Bamba;

    6) $10,000.00 against Defendant Ed Perez.

**C.** **Grant Compensatory Damages of $10,000.00 against each of the Defendants for lost of Education Release Federal Grant which Plaintiff received for his education, and for the lost of days off Plaintiff's sentence which he would have earned under the Work Credit Program.**

**D.** **Issue a Declaratory Judgment that Defendants actions were arbitrary and capricious which violated the United States Constitution and local law Executive Order 94-19 when:**

    1) Defendant Frank Ishizaki *breached his duty* by failing to fulfill his ministerial duties mandated to him alone by law, which are discretionary or Quasi-Judicial in character;

    2) Defendant Francisco B. Crisostomo acted in *Deliberate Indifference* as a result from the negligent performance of his ministerial duties;

      3) Defendant Alan San Nicolas *abused his discretion* by organizing an isolated incident in the act of *Deliberate Indifference* and obstructing a Pre-Hearing investigation;

      4) Defendant Raymond Quichocho *unlawfully acted in excess of jurisdiction;*

      5) Defendant Vincent Bamba acted in *Deliberate Indifference* as a result from the negligent performance of his ministerial duties;

      6) Defendant Ed Perez acted in *Deliberate Indifference* as a result from the negligent performance of his ministerial duties.

**E.**     **Possible Settlement.**

**F.**     **Grant such other relief as it may appear Plaintiff is entitled.**

Respectfully submitted,

Michael Jr. G. Laguana, Pro'Se.

**Michael Jr. G. Laguana, Pro' Se,**
**c/o Department of Corrections (ACF)**
**P.O. Box 3236**
**Hagatna, Guam   96932**
**Tel: (671) 734-3981 thru 9**

Michael Jr. G. Laguana, Pro Se,
c/o Department of Corrections (ACF)
P.O. Box 3236
Hagatna, Guam 96932
Tel: (671) 734-3981 thru 9

UNITED STATES DISTRICT COURT
DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | | |
|---|---|---|
| Michael Jr. G. Laguana,<br>　　　　Plaintiff,<br><br>　　　v<br><br>Frank Ishizaki, Director,<br>Francisco B. Crisostomo, Warden,<br>Alan San Nicolas, Corporal,<br>Raymond Quichocho, Correctional Officer,<br>Vincent Bamba, Correctional Officer,<br>Ed Perez, Correctional Officer, at the<br>Department of Corrections, in their<br>individual and official capacities,<br>　　　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. CV_____<br><br><br>STATEMENT OF FACTS |

## DEFINITIONS

1.　　Minimum-In Facility (Post#24) = A classification level for inmates who have met

　　　the time frame requirements as set by the Adjustment Classification Committee

　　　and approved by the Director of Corrections.


2.　　Minimum-Out/Halfway House (Post#9) = The highest classification level for those

　　　inmates in Work Credits, Education Release, and Work Release and are prepared for

　　　programs established by law or Executive Orders.


3.　　Pre-Hearing Detention = A form of separation from the general population in

　　　which inmates committing an alleged violation of institutional rules are confined

　　　for a period not exceeding 120 hours from the date and time of the incident.

4.  Disciplinary Segregation = A place of punishment for inmates who have been found guilty by the Disciplinary Hearing Board for violating institutional rules and regulations.

5.  Disciplinary Hearing Board (DHB) = Members composed of Department of Corrections employees who are appointed by the Director of Corrections to hear institutional cases of alleged violations.

6.  Post#6 = A unit within the confines of the Main Facility (ACF) which is used for housing inmates who are placed on Pre-Hearing Detention and Disciplinary Segregation.

## STATEMENT OF FACTS

Michael Jr. G. Laguana is an inmate at the Department of Corrections (DOC) in Mangilao, Guam. Inmate Michael Laguana was a resident of the Halfway House (Post#9) of DOC who received animus treatment and harassment from certain Prison Officials assigned to Post#9. On or about December 2001 and January 2002, inmate Laguana verbally told his Caseworker (CSW) Mark Perez of the animus treatment and harassment that he (Laguana) had been receiving from certain Prison Officials since his return to Post#9.

On or about December 2001 and January 2002, CSW Mark Perez assisted inmate Laguana on how to go about approaching these problems in issue. On or about December 2001 and January 2002, CSW Mark Perez hand delivered the grievances filed by inmate Laguana to former Director of Corrections, Angel Sablan. Inmate Laguana anticipated that the animus treatment and harassment which he received will worsen and would soon lead him back to punishment in solitary confinement (Disciplinary Segregation), and demotion in classification level immediately thereafter. Inmate Laguana pleaded for

help to prevent these anticipated allegations from happening. On February 5, 2002 inmate Laguana anticipated correctly.

Inmate Laguana was falsely and wrongfully placed in Disciplinary Segregation for 40 days and was immediately demoted in classification level. On or about August of 2002 after receiving a letter from inmate Laguana [redressing his administrative DHB appeal], the department's administration corrected their mistake and restored inmate Laguana back to his original classification status "Minimum-Out." However, inmate Laguana was temporarily housed at the Minimum-In Facility (Post#24).

On or about September or October 2002, inmate Laguana once again asked for help through grievance, or otherwise provided notification (via privilege mail) to Warden Francisco B. Crisostomo. Inmate Laguana requested to remain at Post#24 with all rights, privileges, and programs of Minimum-Out to still be entitled to him. On or about September or October 2002, Warden Crisostomo called inmate Laguana (via unit control telephone) at Post#24. Inmate Laguana specifically told Warden Crisostomo that he (Laguana) wishes to remain at Post#24 with all Minimum-Out rights, privileges, and programs to still be entitled to him. Inmate Laguana specifically told Warden Crisostomo that he (Laguana) refuses to be transferred back down to Post#9 [in fear of again reaping animus treatment and/or repercussions from those Prison Officials who are still assigned to Post#9] and would only accept the transfer if those Prison Officials in particular are reassigned. [Inmate Laguana also filed grievance or otherwise provided notification _ raising the same issues that was brought to the attention of Angel Sablan _ to former Acting Director Ted Lewis].

Considering the circumstances surrounding inmate Laguana's request, Warden Crisostomo agreed to approve such request. However, on or about November 2002, Warden Crisostomo went against his word and had inmate Laguana transferred to Post#9 against his will, jeopardizing the safety and well-being of inmate Laguana.

On August 3, 2003 after a unit meeting at Post#9 in the Department of Corrections, Correctional Officer Ed Perez approached inmate Michael Laguana in the Day Room area of Post#9 and asked inmate Laguana, "What seems to be the problem?" Inmate Laguana told Officer Perez that ever since inmate Jose Siguenza [an inmate recently transferred to Post#9] was assigned to bunk up with him, inmate Laguana could not get any rest because of the loud snoring that came from inmate Siguenza. [Inmate Laguana was under prescribed medication for excessive pain from a broken thumb and an infected foot, and needed the rest].

Officer Perez told inmate Laguana, "I'll take care of the problem...I'll have inmate Siguenza move to another room...Don't do anything Mike because you have a lot to lose...." Officer Perez informed inmate Laguana that he will switch his bunkmate (inmate Siguenza) with inmate Michael Mendiola. Unfortunately, the switch was never made and Officer Perez never took care of the problem.

Two days later on August 5, 2003 on or about 0550hrs., inmate Laguana got out of his bed in a groggy mood from the exhaustion of lack of sleep and mental stress, and pushed the swing door opened [with a clinched fist] and proceeded to the front yard to get a clear mind. Correctional Officer M. A. Reyes approached inmate Laguana and asked Laguana, "What's wrong?" Inmate Laguana said that he could not sleep because of the loud snoring. Correctional Officers M. A. Reyes and R. I. Quichocho then wrote an Informational Report regarding what had happened, not an Incident Report.

On or about 0640hrs. [during shift change] when Correctional Senior Officer V. J. Bamba reported for duty, Officer Quichocho informed Senior Officer Bamba about what had happened. Senior Officer Bamba then called inmate Laguana to the exterior weight room area of Post#9 and verbally counseled inmate Laguana. Senior Officer Bamba in a calm manner said to inmate Laguana, "You know what you did was wrong...Why did you punch the door...It's natural for people to snore...Don't let it happen again...Don't worry, when I come back from Work Credit Detail, I will inform Corporal San Nicolas that

I will have either you or Siguenza move to another room...Okay?...Esta...." Senior Officer Bamba and inmate Laguana both headed towards the unit's control room. On or about 0700hrs. [upon completion of shift change], Correctional Officers Reyes and Quichocho secured their duty. On or about 0715hrs., Senior Officer Bamba left the facility for Work Credit Detail. At this time, all officers had left the facility.

Inmate Laguana then went inside his room and prepared himself for detail work assignment. On or about 0815hrs., while inmate Laguana waited to be picked up by his supervisor (Mr. Joe LeonGuerrero), Corporal Alan San Nicolas reported for duty. In the visitation area in front of Post#9, Corporal San Nicolas questioned/counseled inmate Laguana about an Informational Report submitted by Correctional Officers M. A. Reyes and R. I. Quichocho. Inmate Laguana explained the situation and told Corporal San Nicolas that Senior Officer Bamba is aware of the matter and he had been already counseled by Senior Officer Bamba.

Corporal San Nicolas in an angry and resentful manner said to inmate Laguana, "Well, I'm surprise that you're still here!...I don't know why they didn't confine you!... I don't care about the door, I don't like what's on your face!...Why didn't you shave!... So you're gonna blame Taitingfong for not giving you a razor?!...You've been walking a thin line since you got back down here!!...How many times were you instructed to shave?!... You get incoming from your family but yet you can't afford a razor?!...Don't give me that, I use the same razor at home to shave!...Are you going to pay for the door?!...How can you pay for the door when you can't even afford a razor?!...Go shave Laguana!!...Get out of my face!!!...."

On or about 0825hrs., Corporal San Nicolas got into his vehicle and left to his office. Inmate Laguana went to shave and headed to his room afterwards. On or about 0845hrs., Correctional Officer M. Mapote arrived at the unit's control of Post#9 from the Office of Corporal San Nicolas. Officer Mapote then called inmate Laguana to the unit control. Officer Mapote then told inmate Laguana in a firm manner, "I've been ordered by

Corporal San Nicolas to bring you up to Post#6...You are being placed on Pre-Hearing Detention...I have to cuff you...You can be cuffed any which way you want, front or back, it doesn't matter...It's up to you how you want it...I don't know what's going on...All I know is that I've been instructed to bring you up to Post#6.

Inmate Laguana was immediately cuffed and was brought straight up to Post#6 and placed on Pre-Hearing Detention. On August 6, 2003 on or about 0145hrs., at Post#6, the cell door of inmate Laguana popped opened. Officer R. I. Quichocho entered the cell and served inmate Laguana his Incident Report [Notice of Charges]. Inmate Laguana in a confused manner asked Officer Quichocho, "Why are you the one serving my papers?" Inmate Laguana then refused to sign the Incident Report.

On August 6, 2003 on or about 0840hrs., inmate Laguana was brought to the South Wing Day Room to be investigated. Corporal San Nicolas then entered the Day Room as the investigating officer for inmate Laguana's institutional case [the same Corporal San Nicolas who had prior knowledge of inmate Laguana's case and who had initiated the Charging Process].

Inmate Laguana did not say much because he believed that something wasn't right. After a brief investigation, inmate Laguana returned to his cell. On August 8, 2003 on or about 1023hrs., inmate Laguana appeared before the Disciplinary Hearing Board (DHB). Corporal San Nicolas appeared again in inmate Laguana's case, "this time sitting as the Chairman for the DHB" [the same Corporal San Nicolas who had prior knowledge of inmate Laguana's case, who had initiated the Charging Process, who investigated the case, and who was the Decision Maker in the investigating process of the case]. Inmate Laguana believed that something was really - really wrong. Inmate Laguana asked Corporal San Nicolas if he could remove himself from the Board. Thinking that there are witnesses around, Corporal San Nicolas had no choice but to excuse himself. Minutes into the hearing, Corporal San Nicolas walked back into the room, interrupted the hearing, and slipped a note under the hand of Corporal Alan Borja [Vice Chairman who presided in the

absence of Corporal San Nicolas].

The hearing went on and inmate Laguana asked that his case be dismissed due to conflict of interest and procedural due process violations.  The DHB rejected the claim raised by inmate Laguana and stipulated that the Board found no basis to those claims. Inmate Laguana was found guilty for damaging government property, conduct which disrupts, and was ordered to serve 30 days in Disciplinary Segregation.

Inmate Laguana filed an appeal to the Director of Corrections, Frank Ishizaki, on August 11, 2003.  Director Frank Ishizaki never responded since then.  On September 16, 2003 inmate Laguana was demoted two-levels down in classification.

## DECLARATION

I, Michael Jr. G. Laguana, appearing Pro Se, and an inmate at the Department of Corrections, hereby declare under Penalty of Perjury that I have provided the foregoing statement of facts, that I have read the statement of facts stipulated herein, and that the same is true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

By: _____
Michael Jr. G. Laguana, Pro Se

NOVEMBER 20, 2003/ 1843 HRS.
Date and time of Signature

Page 1

Michael Jr. G. Laguana, Pro' Se,
c/o Department of Corrections (ACF)
P.O. Box 3236
Hagatna, Guam  96932
Tel: (671) 734-3981 thru 9

# PROOF OF SERVICE (CERTIFICATE OF SERVICE)

I. **Michael Jr. G. Laguana**, Plaintiff appearing Pro'Se, hereby certify that I have served a true and correct filed copy of:

## CIVIL COMPLAINT

upon Defendants Frank Ishizaki, Francisco B. Crisostomo, Alan San Nicolas, Raymond Quichocho, Vincent Bamba, and Ed Perez (in their individual and official capacities) and addressed same to:

**Frank Ishizaki, et. al (Defendants)**
**Department of Corrections**
**Mashburn Lane in Mangilao, Guam**
**P.O. Box 3236**
**Hagatna, Guam 96932**
**Tel: (671) 734-3981 thru 9**

by delivering same for the above-named defendants Frank Ishizaki, Francisco B. Crisostomo, Alan San Nicolas, Raymond Quichocho, Vincent Bamba, and Ed Perez, at the Department of Corrections in Mangilao, Guam, on this __21__ day of __NOVEMBER__ 2003.

I declare under Penalty of Perjury that the following is true and correct.

Dated:__NOVEMBER 21, 2003__          By:_____
                                        Michael Jr. G. Laguana, Pro'Se

**Page 1 of 1**