**FILED**
DISTRICT COURT OF GUAM

MAR - 9 2004

MARY L. M. MORAN
CLERK OF COURT

Michael Jr. G. Laguana, Pro Se
**Department of Corrections (ACF)**
P.O. Box 3236
Hagatna, Guam 96932
Tel: (671) 734-3981 thru 9

# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF GUAM
### TERRITORY OF GUAM

| | |
|---|---|
| Michael Jr. G. Laguana, ) | |
| Plaintiff, ) | Civil Case No. **CV-03-00040** |
| vs. ) | |
| Frank Ishizaki, Director, ) | |
| Francisco B. Crisostomo, Warden, ) | |
| Alan San Nicolas, Corporal, ) | **OPPOSITION TO** |
| Raymond Quichocho, Correctional Officer, ) | **DEFENDANTS'** |
| Vincent Bamba, Correctional Officer, ) | **MOTION TO DISMISS** |
| Ed Perez, Correctional Officer, at the ) | |
| Department of Corrections, in their ) | |
| individual and official capacities, ) | |
| Defendants. ) | |
| ) | |
| ) | |

---

## PLAINTIFF'S OPPOSITION
## TO DEFENDANTS'
## MOTION TO DISMISS

---

*PREPARED AND SUBMITTED BY:*

**Michael Jr. G. Laguana, Pro Se,**
**Department of Corrections (ACF)**
P.O. Box 3236
Hagatna, Guam 96932
Tel: (671) 734-3981 thru 9

# ORIGINAL

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**............................ i
- CASES............................ i
- CASES............................ ii
- CASES............................ iii
- CASES............................ iv
- CASES............................ v
- STATUTES............................ v
- OTHER AUTHORITIES..................... vi


**INTRODUCTION**..................................... Page 1

**ARGUMENT**........................................... Page 1-2

    I.    DEFENDANTS, IN OFFICIAL CAPACITIES, ARE NOT
        IMMUNE................................................................. Page 2-3

    II.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
        IMMUNITY............................................................... Page 3-4

    III.  DEFENDANTS VIOLATED PLAINTIFF'S CLEARLY
        ESTABLISHED CONSTITUTIONAL OR FEDERAL
        STATUTORY RIGHT.............................................. Page 4-16

    IV.  VIOLATIONS OF STATE LAW ARE COGNIZABLE UNDER
        42 U.S.C. § 1983.................................................... Page 16

    V.   PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES.... Page 16, 18

    VI.  DEFENDANTS PRESERVE NO RIGHT TO CHALLENGE
        PERSONAL JURISDICTION...................................... Page 18, 19

**CONCLUSION**....................................... Page 19-20

# TABLE OF AUTHORITIES

**CASES** | **PAGE**

Shabazz v. Cole, 69 F.Supp.2d 177 (D. Mass. 1999)................................... 1, 3, 4, 5, 6, 7, 9, 10

Watterson v. Page, 987 F.2d at 3 (1993)............................................... 1

Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079 (1972)................................. 1

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957)..................................... 1

Weiner v. Bank of King of Prussia, D.C. Pa. 1973, 358 F.Supp. 684 ................. 1

Arthur A. Aranson, Inc. v. Ing-Rich Metal
Products Co., 12 F.R.D. 528 (D.C. Pa. 1952)........................................... 2

King v. Fayette County, 92 F.R.D. 457 (D.C. Pa. 1981)................................. 2

Messere v. Commissioner of Correction, 27 Mass. App. Ct. 542,
548-549 (1989)........................................................................ 2

Langton v. Secretary of Pub. Safety, 37 Mass. App. Ct. 15, 19-20 (1994)............ 2

Flores v. Otero, 426 U.S. at 582-583 ................................................ 2

Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992)......................................... 3

Elliot v. Cheshire County, 940 F.2d 7, 10 (1st Cir. 1991)............................ 3

Harlow v. Fitzgerald, 457 U.S. 800, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982)......... 3

Daral-Islam v. DuBois, 997 F.Supp. at 178 .......................................... 3

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).......................... 3

-i-

| **CASES** | **PAGE** |
|---|---|

Longval v. Commissioner of Correction, 404 Mass. 325,
535 N.E. 2d 588, 592 (Mass. 1989)............................................................ 4

Farmer v. Brennan, 114 S.Ct. 1970 (1994)............................................. 5, 6, 9, 10, 11

Helling v. McKinney, 509 U.S. 25 at 33 (1993)....................................... 5, 9, 10

Washington v. Harper, 494 U.S. at 225 .................................................. 5, 9, 10

Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988) cert. denied,
488 U.S. 1047 (1989)................................................................................ 6

Griffin v. Coughlin, 743 F.Supp. 1006, Page 8 1010 (NDNY 1990)................. 6

Adams v. Mathis, 458 F.Supp. 302 (D.C. Ala. 1978)................................... 6

Rhem v. Malcom, 507 F.2d 333 (2d Cir. 1974)......................................... 6

Pugh v. Locke, 406 F.Supp. 318 (M.D. Ala. 1976).................................... 6

Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir 1998) cert. denied,
525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999)............................. 9, 11

Stewart v. Gates, D.C. Cal., 450 F.Supp. 583, remanded, 618 F.2d 117 ........... 10

Ramos v. Lamm, D.C. Colo., 520 F.Supp. 1059 ....................................... 10

Hoptowit v. Ray, 682 F.2d 1237 (1982).................................................. 10

Fritz v. Oregon State Penitentiary, 30 Ore. App. 1117, 569 P.2d 654 (1977)...... 11

Myers v. askew, 388 So.2d 1128 (Fla. App. 1976)..................................... 11-12

Finney v. Arkansas Board of Correction, 505 F.2d 194, 208 (8th Cir. 1974)........ 12

**CASES**                                                                                                                                    **PAGE**

Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975),
Id., 421 U.S. at 47 ............................................................................................. 12

Ruiz v. Estelle, D.C. Tex., 503 F.Supp. 1265, *stay denied in part,
granted in part* 650 F.2d 555 *and* 666 F.2d 854, *affirmed in part,
reversed in part on other grounds,* 679 F.2d 1115, *amended in part
and vacated on other grounds* 688 F.2d 266, *certiorari denied,*
103 S.Ct. 1438, 460 U.S. 1042, 75 L.Ed.2d 795 ..................................... 12

Jones v. Smith, 466 N.Y.S.2d 175 (Sup. 1983), aff'd,
475 N.Y.S.2d 809 (N.Y. 1984)................................................................... 12, 13, 14

Finney v. Mabry, 455 F.Supp. 756 (D.C. Ark. 1978).................................... 12

Wightman v. Super. Mass. Corr. Inst., 475 N.E.2d 85 (Mass. App. 1985).......... 12

Garcia v. lefevre, 477 N.Y.S.2d 862 (N.Y. 1984)....................................... 13

Santana v. Coughlin, 481 N.Y.S.2d 732 (Sup. N.Y. 1984)............................. 13, 14

Homer v. Morris, 684 P.2d 64 (Sup. Utah 1984)......................................... 13

Kyle v. Hanberry, 677 F.2d 1386 (11th Cir. 1982)...................................... 13

Smith v. Town of Longmeadow, 29 Mass. App. Ct. 599,
563 N.E.2d 697, 699 (Mass. App. Ct. 1990)................................................ 13

New York State Insp., Security Law Enf. Emp.,
Dist. Council 82, AFSCME, AFL-CIO v. State of
New York Dept. of Correctional Services, 399 N.Y.S.2d
406 (Sup. N.Y. 1977)............................................................................. 13-14

Anderson v. Smith, 697 F.2d 239 (1983).................................................. 14, 15-16

Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975,
41 L.Ed.2d 935 (1974)........................................................................... 14, 15, 16

-iii-

**CASES**                                                                      **PAGE**

Tasker v. Mohn, 267 S.E.2d 183 (W. Va. 1980)..................................... 16

Lanzetta v. New Jersey, 306 U.S. 451, 453 ............................................. 14

United States v. Watashe, 102 F.2d 428-31 (10th Cir. 1939)........................... 17, 18

Jenks v. Henys, 378 F.2d 334 (C.A. Wash. 1967)..................................... 18

Benny v. Pipes, C.A.9 (Ariz) 1986, 799 F.2d 489, *amended,*
807 F.2d 1514, *cert. denied,* 108 S.Ct. 198, 484 U.S. 870, 98 L.Ed.2d 149 ........ 19

Pardazi v. Cullman Medical Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990)............. 19

Product Promotions, Inc. v. Costeau, 495 F.2d 483, 490 (5th Cir. 1974)............. 19

Ngiraingas v. Sanchez, 495 U.S. 182, 110 S.Ct. 1737,
109 L.Ed.2d 163 (1990)................................................................. 2

Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995)................................ 6, 7

Horstkoetter v. Department of Pub. Safety, 159 F.3d 1265,
1277, 1278 (10th Cir. 1998)............................................................ 4

Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 3021,
82 L.Ed.2d 139 (1984)................................................................. 4

Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 1084 (1984).................. 5, 6

FCC v. Beach Communications Inc., 508 U.S. 307, 316,
113 S.Ct. 2096 (1993)................................................................. 6

Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489,
75 S.Ct. 461 (1955)................................................................... 6

-iv-

**CASES**                                                                 **PAGE**

Johnston v. Horne, 875 F.2d 1415, 1424 (9th Cir. 1989).............................. 18

Stafford v. Briggs, 444 U.S. 527, 553, n.5 (1980)..................................... 18


**STATUTES**

Federal Rules of Civil Procedure (Fed. R. Civ. P.) Rule 12(b)(6)...................... 1, 16, 19

Federal Rules of Civil Procedure (Fed. R. Civ. P.) Rule 8(a)........................... 1, 3

Federal Rules of Civil Procedure (Fed. R. Civ. P.) Rule 4(B)(i)....................... 18

Federal Rules of Civil Procedure (Fed. R. Civ. P.) Rule 4(c)(2)....................... 18, 19

Federal Rules of Civil Procedure (Fed. R. Civ. P.) Rule 12(b)(2)..................... 19

Title 28 U.S.C. § 1915 (e)(2).......................................................... 1

Title 28 U.S.C. § 1915 .............................................................. 18

Title 28 U.S.C. § 1916 .............................................................. 18

Title 42 U.S.C. § 1983 .............................................................. 4, 5, 16

Title 42 U.S.C. § 1997(e)............................................................ 16

Title 42 U.S.C. § 1421a (1982 ed.), 858 F.2d at 1373 .............................. 3, 4

**OTHER AUTHORITIES**                                                    **PAGE**

Organic Act of Guam § 3 ..................................................................... 3, 4

Executive Order 94-19, Chapter 1, § 1.1.(B)........................................ 3, 4, 13

Executive Order 88-19, Chapter 11, Article 2, § 11.4.............................. 3, 4, 5, 13

Executive Order 94-19, Chapter 3, § 3.2.(A-J)...................................... 3

Executive Order 94-19, Chapter 3, § 3.2.(A)......................................... 5, 9,10, 11,
                                                                         13, 14, 15

Executive Order 94-19, Chapter 3, § 3.2.(B).......................................... 14

Executive Order 94-19, Chapter 3, § 3.24............................................. 13

Executive Order 94-19, Chapter 3, § 3.3. (C)(2).................................... 15, 17, 18

Executive Order 94-19, Chapter 3, § 3.30.(B)........................................ 15, 17, 18

Executive Order 94-19, Chapter 3, § 3.30.(D)........................................ 15

Executive Order 94-19, Chapter 3, § 3.32.(B)........................................ 15

Executive Order 94-19, Chapter 16, § 16.2.(b) and § 16.3.......................... 16

Executive Order 94-19, Chapter 16, § 16.1.(A)....................................... 17

Guam Public Law P.L. 19-11 .............................................................. 7, 8

Guam Public Law P.L. 19-06 .............................................................. 7, 8

-vi-

## *INTRODUCTION*

The Defendants, by and through their Counsel, Assistant Attorney General ***James T. Mitchell***, makes a host of arguments seeking dismissal with prejudice on the grounds that they are immune from suit in their official capacities; they have qualified immunity in their individual capacities; and Plaintiff failed to exhaust Administrative Remedies. Finally, Defendants argue that they preserve the right to challenge personal jurisdiction because it is not clear that all Defendants have been properly served in both their official and individual capacities. These arguments, however, are not well taken.

The Plaintiff will respond to the Defendants' "12(b)(6) motion" in the order they were made.

## *ARGUMENT*

The Defendants made a motion to dismiss the Section 1983 action filed by Plaintiff pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) 12(b)(6) and 28 USC 1915(e)(2), on the ground that the complaint fails to state a claim upon which relief can be granted.

"When reviewing a Fed. R. Civ. P. 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and makes all reasonable inferences in favor of Plaintiff." Shabazz v. Cole, 69F.Supp.2d 177 (D. Mass. 1999); Watterson v. Page, 987 F.2d at 3 (1993). See also, Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079 (1972) ( "Allegations of complaint are assumed to be true").

The Plaintiff provided in the complaint a set of facts, cited numerous sections of law (which Defendants have clearly violated) found in Executive Order 94-19 supporting those facts, thereby joining those facts and citations of rules. Thus, Plaintiff has stated a claim giving rise to a Constitutional violation which entitles him to relief. The Defendants have not once replied to, either admitting or denying, any of the factual paragraphs in the complaint.

"The federal rules of civil procedure do not require a claimant to set out in detail the facts upon which he bases his claim but require only a short and plain statement of the claim that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957); Rule 8(a) Fed. R. Civ. P., Weiner v. Bank of King of

Prussia, 358 F. Supp. 684 (D.C. Pa. 1973). "No technical forms of pleading or motions are required, is sufficient." Arthur A. Aranson, Inc. v. Ing-Rich Metal Products Co., 12 F.R.D. 528 (D.C.Pa. 1952). Moreover, "Complaints drawn by pro se litigants are held to less stringent standard than those drawn by legal counsel." King v. Fayette County, 92 F.R.D. 457 (D.C.Pa. 1981)..

Plaintiff's allegations in his complaint that imply that correction officials acted in a vindictive manner and for an improper motive in disciplining the Plaintiff are sufficient and, thus, should withstand a motion to dismiss. *Cf.* Messere v. Commissioner of Correction, 27 Mass. App. Ct. 542, 548-549 (1989), Langton v. Secretary of Pub. Safety, 37 Mass. App. Ct. 15, 19-20 (1994).

## I. DEFENDANTS, IN OFFICIAL CAPACITIES, ARE NOT IMMUNE.

The Defendants hold that the government of Guam is a Sovereign and, as much, is immune from this suit although there is no historical fact in law or common-law basis supporting their claim. The Defendants further claim that where a suit has not been consented to by the Government of Guam, dismissal of this action is required although there is no historical fact in law or common-law basis supporting that claim either.

The Defendants argue that neither a Territory nor an Officer of the Territory acting in his *Official Capacity* is a "person" within the meaning of § 1983, citing Ngiraingas v. Sanchez, 495 U.S. 182, 193, 110 S.Ct. 1737 (1990). In Ngiraingas, the Court's concept that "Congress did not intend to include territories as persons who would be liable under § 1983 is only applicable to Defendants in their official capacities. Plaintiff, however, sued them in *official and individual* capacities. Moreover, Ngiraingas does not preclude Defendants from being liable for declaratory and injunctive relief, under 42 U.S.C. § 1983. Defendants' attempt to misrepresent the law is deplorable.

"[T]he evident aim was to insure that all persons residing in the territories not be denied, by persons acting under color of territorial law, rights guaranteed them by the Constitution and laws of the United States." Flores v. Otero, 426 U.S. at 582-583. The Defendants do not have complete immunity from suits in federal court under federal law. Therefore, the Defendants acting in their *Official Capacities* are "persons" within the meaning of § 1983 and they are not immune from this

suit for declaratory and injunctive relief. Plaintiff is still entitled to relief through other alternative remedies such as declaratory judgment and injunctive relief. Shabazz v. Cole, 69 F.Supp.2d 177 (D. Mass. 1999).

## II.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

The Defendants argue that they enjoy qualified immunity from civil damages. However, the standard to establish qualified immunity "is not demanding." Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992). Qualified immunity only exists insofar as Defendants' "conduct did not violate clearly established statutory or constitutional right of which a reasonable person would have known." Elliot v. Cheshire County, 940 F.2d 7, 10 (1st Cir. 1991)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982)).

However, the contour of the Plaintiff's rights were sufficiently clear at the time of the conduct at issue of which a reasonable prison official would have known, which a reasonable prison official have no excuse for not knowing, and which a reasonable prison official is mandated to know. *See* Executive Order 88-19, Chapter 11, Article 2, § 11.4., *See also* Executive Order 94-19, Chapter 3, § 3.2. (A-J), Executive Order 94-19, Chapter 1, § 1.1.(B).

In Ngiraingas v. Sanchez, 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990), the Court of Appeals ruled that officers could be sued under § 1983 in their *Official Capacities* implying that "officers were not entitled to immunity from suit in their *Individual Capacities* by virtue of § 3 of the Organic Act, as amended, 48 U.S.C § 1421a (1982 ed.). 858 F.2d at 1373."

Defendants can be sued in their *Individual Capacities* for monetary damages under § 1983, Daral-Islam v. DuBois, 997 F.Supp. at 178, and qualified immunity does not shield public officials from prospective injunctive relief. Shabazz v. Cole, *Supra*, 69 F.Supp.2d 177. "When state officer acts under state law in manner violative of federal constitution, he comes into conflict with superior authority of that constitution and is stripped of his official or representative character and subjected in his person to consequences of his individual conduct, a state has no power to impart him any immunity from responsibility to superior authority of United States." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

1

2

3      Accordingly, the Defendants made no argument that their immunity extends beyond what

4 would be available to a Defendant in an action under 42 U.S.C. § 1983. Longval v. Commissioner

5 of Correction, 404 Mass. 325, 535 N.E.2d 588, 592 (Mass. 1989). Officers are not entitled to

6 immunity from suit in their individual capacities. (See also §3 of the Organic Act, as amended, 48

7 U.S.C. § 1421a (1982 ed.) 858 F.2d at 1373. The Defendants' motion to dismiss should be denied.

8 **III.    DEFENDANTS VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL OR FEDERAL STATUTORY RIGHT.**

9

10      The Defendants raised a qualified immunity defense in this § 1983 lawsuit stating that the

11 Plaintiff bears the burden of establishing (1) "that the Defendants' actions violated a federal

12 constitutional or statutory right," and (2) 'that the right violated was clearly established at the time

13 of the conduct at issue," citing Horstkoetter v. Department of Pub. Safety, 159 F.3d 1265, 1277,

14 1278 (10th Cir. 1998) and Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d

139 (1984).

15      Plaintiff, however, need not prove his case on Defendants' motion to dismiss, based on Rule

16 12(b)(6). To the contrary, Plaintiff's allegations are considered true. Shabazz v. Cole, 69F.Supp.2d

17 177 (D. Mass. 1999). The complaint clearly states that the Defendants' actions did violate Plaintiff's

18 clearly established constitutional or federal statutory right, and the contour of the Plaintiff's rights

19 violated were sufficiently clear at the time of the conduct at issue. Executive Order 94-19

20 [promulgated on December 30, 1994] is clearly basic Administrative Law that governs the Guam

21 Department of Corrections of which the Defendants have no excuse for not knowing, and which the

22 Defendants are mandated to know.

23 Executive Order 94-19, Chapter 1, § 1.1 (B) clearly provides:

24

25     **"A copy of the rules and regulations for the Administration of Correctional Institutions and other places of confinement (manual) shall be made available to each inmate and each employee. The manual shall be made a part of the inventory at each unit to**

26 **facilitate the operational and administrative requirements."**

27 Executive Order 88-19, Chapter 11, Article 2, § 11.4. clearly provides:

28

**"Employees shall promptly obey orders given them by proper authority and shall familiarize themselves with the rules of the Department and their division. <u>Ignorance of the Rules is no excuse for violation.</u>"**

The Executive Order 94-19 simply and clearly establishes the Plaintiff's Rights that a reasonable Prison Official would have known, which a reasonable prison official have no excuse for not knowing, and which a reasonable prison official is mandated to know.

Executive Order 94-19, Chapter 3, § 3.2. Inmate Rights And Responsibilities (A) clearly provides:

**"YOU HAVE THE RIGHT to expect that as a human being you be treated respectfully, impartially, and fairly by all personnel."**

An Inmate is "informed of the rules, procedures, and schedules" by Defendants and their subordinates. Clearly, Defendants are presumed to know the same. The Defendants argue that in order for the Plaintiff to state a cognizable claim under 42 U.S.C. § 1983, based upon the allegations of cruel and unusual punishment, the Plaintiff must allege unnecessary and wanton infliction of pain, citing Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 1084 (1984). The Plaintiff, however, did in fact allege unnecessary and wanton infliction of pain. Defendants Francisco B. Crisostomo, Alan San Nicolas, Vincent Bamba, and Ed Perez failed to take reasonable measures to guarantee the Plaintiff's safety and well-being.

"Under Eighth Amendment, prison officials must take reasonable measures to guarantee safety of inmates" Farmer v. Brennan, 114 S.Ct. 1970 (1994) and "[A] prison officials' duty under the Eighth Amendment is to ensure "reasonable safety." Helling v. McKinney, 509 U.S. 25 at 33 (1993); *See also* Washington v. Harper, 494 U.S. at 225.

The Defendants further state that the Plaintiff must prove unnecessary and wanton infliction of pain, again citing Whitley *Supra*. "Prisoner claiming that prison officials violated the Eighth Amendment duty to protect him against harm need not show that official acted or failed to act believing that harm actually would befall an inmate, it is sufficient that official acted or failed to act despite his knowledge of substantial risk of serious harm." Farmer *Supra*. "Under the Eighth Amendment, U.S. Const., prison officials must take reasonable measures to guarantee the safety of

prison inmates." Shabazz v. Cole, 69 F.Supp.2d 177 (D. Mass. 1999).

Moreover, the Defendants argue that the "Deliberate Indifference" standard is only relevant in the context of medical needs of prisoners, citing once again Whitley *Supra*. However, the Defendants are incorrect. The "Deliberate Indifference" standard also applies in a supervisory liability context in a prison setting. *See* Shabazz v. Cole, 69 F.Supp.2d 177 (D. Mass. 1999). In Farmer v. Brennan, 114 S.Ct. 1970 (1994), "Prison officials' "deliberate indifference" to substantial risk of serious harm to an inmate violates Eighth Amendment."

With respect to the prohibition of the Equal Protection Clause, the Defendants claim that it "goes no further than the invidious discriminatory," citing FCC v. Beach Communications, Inc, 508 U.S. 307, 316, 113 S.Ct. 2096 (1993) quoting Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461 (1955). The Plaintiff disagrees. "Prisoners do not surrender their rights to equal protection at the Prison gate." Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988), cert. denied, 488 U.S. 1047 (1989).

Thus, in prison cases dealing with fundamental rights "[t]he appropriate analysis for an equal protection claim is whether the unequal treatment bears a reasonable relationship to legitimate penological interests." Griffin v. Coughlin, 743 F.Supp. 1006, Page 8 1010 (NDNY 1990). The Court in Adams v. Mathis, 458 F.Supp. 302 (D.C. Ala. 1978) set forth example that equal protection under the Fourteenth Amendment does go further than the invidious discrimination.

**"Consequently, the lack of adequate outdoor recreation is a violation of both the Due Process and Equal Protection Clauses in the Fourteenth Amendment."** Rhem v. Malcom, 507 F.2d 333 (2d Cir. 1974); Pugh v. Locke, 406 F.Supp. 318 (M.D. Ala. 1976).

Regarding the Due Process Clause, the Defendants claim that the United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995) abandoned the methodology in which it had analyzed due process violations within a prison setting since 1983. The Sandin Court did not abandon due process violations within a prison setting. The Sandin Court stated:

**"Our decision today only abandons an approach that in practice is difficult to administer and which provides anomalous results."**

"In Sandin v. Conner *Supra* the United States Supreme Court limited state created liberty interests to restraints which impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Thus, if the restraint did not exceed the sentence itself such as to give rise to protection by the Due Process Clause of its own force, the restraint must be atypical in relation to the ordinary incidents of prison life." Shabazz v. Cole, 69 F. Supp. 2d 177 (D. Mass. 1999).

The Defendants further claim that the Sandin Court held that a state prison regulations does not create a liberty interest protected by the Due Process Clause merely because it mandates a particular procedure. The Sandin Court held.

> **"that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.*"**

The Sandin Court did not conclude that "Guam" prison regulations, or all other prison regulations for that matter, held not to create a liberty interest. The Sandin Court gave its reasons behind their decision by holding:

> **"that neither the prison regulation nor the due process clause itself afforded the inmate a protected liberty interest that would entitle the inmate to procedural protections under the due process clause, with respect to the disciplinary hearing, because (1) the segregated confinement did not present the type of atypical significant deprivation in which a state might conceivably create a liberty interest; and (2) the chance that a misconduct finding would affect any later decision whether to grant parole to the inmate was too attenuated to invoke the procedural guarantees of the due process clause."**

Unlike the Court in Sandin v. Conner *Supra*, Plaintiff has a liberty interest protected by the Fourteenth Amendment's Due Process Clause, in avoiding the disciplinary confinement he endured. The Plaintiff's segregated confinement and punishment presented the type of "atypical and significant" hardship on the Plaintiff in relation to the ordinary incidents of prison life.

In the absence of punishment, Plaintiff, like all other inmates similarly situated at the Halfway House, had one day taken off his prison sentence by a Territorially-created right under Guam Public Law P.L. 19-11 for every forty (40) hours of work through the Prisoners' Public Works Program; Plaintiff had the liberty to be enrolled and physically participated in college courses at the Guam

Community College by a Territorially created-right under Guam Public Law P.L. 19-06 and received money through a Student Pel Grant Check at the end of every semester through the Education Release Program; Plaintiff freely worked at the Guam Office of Civil Defense and also worked in various places around the Island of Guam; Plaintiff had the freedom and privilege to go on Home-Furlough once a month to see his family without the presence of a correctional officer; Plaintiff lived in a home-setting environment and enjoyed liberty that came along with numerous privileges such as seven days a week visitation, the freedom and privilege to enjoy home-cooked meals, the privilege to wear civilian clothing, the freedom and privilege to physically participate in community programs and activities, the freedom and privilege to physically be in society without the presence of a correctional officer; and the freedom to twenty-four (24) hour access of T.V. viewing, recreation, telephone usage, and fresh air. In other words, the Plaintiff lived like a free civilian, not like a prisoner.

Whereas a result of disciplinary confinement, Plaintiff was removed from the Halfway House and was returned back to the Main Facility of DOC where the Plaintiff, for 30 days, had to spend his entire time alone in a "cell" (with the exception of one hour each day on average for fresh air during which he nonetheless remained isolated from other inmates and was constrained by leg irons).

Furthermore, as a result of disciplinary confinement and punishment, to this very day, the Plaintiff remains demoted two-levels down in classification and is confined to a "cell" from 11pm. to 6am. and idly confined to the "hallway" of his unit from 6am. to 11pm. in which he nonetheless remains constantly supervised by correctional officers. The Plaintiff cannot have his prison sentence reduced nor can he participate in college classes as he was once allowed to under a Territorially-created right under Guam Public Law P.L. 19-11 and P.L. 19-06. The Plaintiff presently remains subjected to numerous restrictions of punishment.

In the absence of punishment compared to the result of disciplinary confinement, it is sufficiently clear that the Plaintiff's punishment worked a fairly major change in his conditions, significantly affecting his liberty. The Plaintiff's segregated confinement and punishment clearly presents the type of "atypical and significant" hardship on the Plaintiff in relation to the ordinary

incidents of prison life. For Defendants to allege otherwise, without any evidence, is sheer frivolity.

The actions of Defendant Crisostomo stated in Plaintiff's First Cause of Action (Paragraph 34 thru 36 and Paragraph 13 thru 16) clearly showed "Deliberate Indifference" by transferring Plaintiff to the Halfway House, thus, failing to accord Plaintiff his right as a human being "to be treated respectfully, impartially, and fairly" pursuant to Executive Order 94-19, Chapter 3, § 3.2.(A) *Supra* and failing to keep him from harm allegedly inflicted by Defendants Alan San Nicolas, Raymond Quichocho, Vincent Bamba, and Ed Perez. "Prison officials' "deliberate indifference" to substantial risk of serious harm to an inmate violates Eighth Amendment." Farmer v. Brennan, 114 S.Ct.1970 (1994).

Although Defendant Crisostomo had actual and constructive knowledge concerning (1) the Plaintiff's conflict of interest with certain prison officials; (2) the animus treatment and repercussions Plaintiff assumed he will receive from those certain prison officials; (3) his request to remain at Post#24 in the interest of his safety and well-being, and (4) the risk of transferring Plaintiff, Defendant Crisostomo still failed to take "reasonable" corrective or preventive measures and had the Plaintiff transferred.

"[A] prison officials' duty under the Eighth Amendment is to ensure "reasonable safety" Helling v. McKinney, 509 U.S.25 at 33 (1993); *See also* Washington v. Harper, 494 U.S. at 225 and "[U]nder the Eighth Amendment, U.S. Const., prison officials must take reasonable measures to guarantee the safety of prison inmates." Shabazz v. Cole, 69F.Supp.2d 177 (D. Mass. 1999) *See also* Farmer v. Brennan, 114 S.Ct.1970 (1994). "Thus, even absent actual knowledge of the unconstitutional conduct," Defendant Crisostomo "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) *cert. denied*, 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999).

As a result of the Plaintiff's transfer and the failure of Defendant Crisostomo to take reasonable measures to guarantee the Plaintiff's safety, the Plaintiff now suffers a "grievous loss" and his punishment worked a fairly major change in his conditions, significantly affecting his

liberty. The Plaintiff's segregated confinement and punishment presents the type of "atypical and significant" hardship on the Plaintiff in relation to the ordinary incidents of prison life.

The actions of Defendants Perez and Bamba stated in Plaintiff's Second Cause of Action (Paragraph 37 thru 39 and Paragraph 17 thru 22) clearly showed "Deliberate Indifference" by negligently performing their ministerial duties, thus, failing to accord Plaintiff his right as a human being "to be treated respectfully, impartially, and fairly" pursuant to Executive Order 94-19, Chapter 3, § 3.2.(A) *Supra* and failing to keep him from harm inflicted by Defendants San Nicolas and Quichocho. "Prison officials' "deliberate indifference" to substantial risk of serious harm to an inmate violates Eighth Amendment." Farmer v. Brennan, *Supra*.

"A prison officials' duty under the Eighth Amendment is to ensure "reasonable safety" Helling v. McKinney,509 U.S. 25 at 33 (1993); *See also* Washington v. Harper, 494 U.S. at 225, and "under the Eighth Amendment, U.S. Const., prison officials must take reasonable measures to guarantee the safety of prison inmates." Shabazz v. Cole, 69 F.Supp.2d 177 (D. Mass. 1999), *See also* Farmer v. Brennan, *Supra*. Although Defendants Perez and Bamba had actual and constructive knowledge concerning the Plaintiff's difficulty sleeping due to another inmate's constant loud snoring and the fact that problems will arise if "reasonable" measures are not taken, Defendants Perez and Bamba still failed to take "reasonable" corrective and preventive measures as they said they would to alleviate the problem that contributed to the Plaintiff's lack of sleep.

Moreover, "Prison officials must provide the inmates with the opportunity for a sufficient amount of uninterrupted sleep...and "[T]he noise levels in prisons should not be allowed to rise beyond reasonable levels." *See e.g.* Stewart v. Gates, D.C. Cal., 450 F.Supp. 583, *remanded,* 618 F.2d 117, Ramos v. Lamm, D.C. Colo., 520 F.Supp. 1059. "Eighth Amendment proscribes unnecessary and wanton infliction of pain, which includes those sanctions that are so totally without penological justification that they result in gratuitous infliction of suffering, including not only physical torture, but any punishment incompatible with evolving standards of decency that mark progress of maturing society." Hoptowit v. Ray, 682 F.2d 1237 (1982). "Prisoner claiming that prison officials violated Eighth Amendment duty to protect him against harm need not show that

official acted or failed to act believing that harm actually would befall an inmate, it is sufficient that official acted or failed to act despite his knowledge of substantial risk of serious harm." Farmer v. Brennan, 114 S.Ct. 1970 (1994). "Thus, even absent actual knowledge of the unconstitutional conduct," Defendants Perez and Bamba "may be liable for the foreseeable consequences of such conduct if" they "would have known of it but for" their "deliberate indifference or willful blindness." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1ˢᵗ Cir. 1998) *cert. denied*, 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999).

As a result of the failure of Defendants Perez and Bamba to take the reasonable measures that would alleviate the Plaintiff's problem, the Plaintiff now suffers a "grievous loss" and his punishment worked a fairly major change in his conditions as a result of that failure, significantly affecting his liberty. The Plaintiff's segregated confinement and punishment presents the type of "atypical and significant" hardship on the Plaintiff in relation to the ordinary incidents of prison life.

The actions of Defendant San Nicolas stated in Plaintiff's Third Cause of Action (Paragraph 40 thru 43 and Paragraph 23 thru 28) clearly showed "Deliberate Indifference" by unlawfully participating in every part of the Plaintiff's Institutional case and by improperly conducting a Pre-Hearing Investigation, thus, failing to accord Plaintiff the Constitutional right to Procedural due process of law and his right as a human being "to be treated respectfully, impartially, and fairly" pursuant to Executive Order 94-19, Chapter 3, § 3.2. (A) *Supra*.

"Prison officials' "deliberate indifference" to substantial risk of serious harm to an inmate violates Eighth Amendment." Farmer v. Brennan, *Supra*. "[T]he Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishment." Farmer v. Brennan, *Supra*. "Here, the evidence indicates that a committee member not only participated in the investigative stage, but also arrived at a decree of prejudgment resulting from that investigation." Fritz v. Oregon State Penitentiary, 30 Ore. App. 1117, 569 P.2d 654 (1977).

"It has been held that a person who participated in the investigation of a case cannot serve as a decision maker" *See e.g.* Myers v. Askew, 388 So.2d 1128 ( Fla. App. 1976) and "Hence, the decision maker must not have personal knowledge of the incident giving rise to the proceeding and

must not have been involved in the charging process." *See e.g.* Myers v. Askew, *Supra.* "In fact, charging officers are forbidden from sitting in judgment on their own complaints in disciplinary proceedings." Finney v. Arkansas Board of Correction, 505 F.2d 194, 208 (8th Cir. 1974). "In Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the United States Supreme court stated as dictum that "a biased decision-maker [is] constitutionally unacceptable." Id.,421 U.S. at 47. "The decision maker in a prison disciplinary proceeding must be sufficiently impartial to satisfy the due process clause, and fundamental tenants of due process logically require that no officer who has been involved, in any respect, in the incident in question, or has had any part in the charging process, may sit on the body which evaluates and passes upon a particular charge." See Ruiz v. Estelle, D.C. Tex., 503 F.Supp. 1265, *stay denied in part, granted in part,* 650 F.2d 555 *and* 666 F.2d 854, *affirmed in part, reversed in part on other grounds,* 679 F.2d 1115, *amended in part and vacated on other grounds,* 688 F.2d 266, *certiorari denied,* 103 S.Ct. 1438, 460 U.S. 1042, 75 L.Ed.2d 795;

Next, Defendant San Nicolas never interviewed the reporting employee (Defendant Quichocho) who wrote the report accusing the Plaintiff of wrongful conduct. "In disciplinary proceeding against inmate of correctional facility, due process requirements could have been met by conducting an interview with the officer who wrote report accusing the inmate of wrongful conduct." Jones v. Smith, 466 N.Y.S.2d 175 (Sup. 1983).

Moreover, the decision of Defendant San Nicolas was relied solely upon a hearsay document by an officer he never once interviewed, and, by nonexisting statements supposedly written by two inmates which were never adduced before the disciplinary body. The evidence Defendant San Nicolas relied upon to support his decision was not adduced at the disciplinary hearing and the evidence presented at the hearing was not the evidence relied upon by Defendant San Nicolas in the investigation."Officials cannot rely in prison proceedings exclusively upon conclusory statements by prison employees or upon accusatory instruments" See e.g. Finney v. Mabry, 455 F.Supp. 756 (D.C. Ark. 1978) and "such accusatory statement, standing alone, is not adequate evidence, and is insufficient" Wightman v. Super. Mass. Corr. Inst., 475 N.E.2d 85 (Mass. App. 1985), as "confirmed

2   by decisions of Courts elsewhere." <u>Jones v. Smith</u>, 466 N.Y.S.2d 175 (N.Y. 1983), *aff'd*, 475

3   N.Y.S.2d 809 (N.Y. 1984); <u>Garcia v. Lefevre</u>, 477 N.Y.S.2d 862 (N.Y. 1984).

4   "Administrative adjudication involving rights protected by due process must be supported by

5   substantial evidence; an unsworn hearsay document does not satisfy that requirement." <u>Jones v.</u>

6   <u>Smith</u>, 466 N.Y.S.2d 175 (Sup. 1983). "It has been held that written report by a prison employee

7   standing alone does not constitute substantial evidence." <u>Santana v. Coughlin</u>, 481 N.Y.S.2d 732

8   (Sup. N.Y. 1984)  In addition, "[An] informant's statement must be factually specific rather than

9   conclusory, in order to establish that the informant speaks from personal knowledge." *See e.g.*

10  <u>Homer v. Morris</u>, 684 P.2d 64 (Sup. Utah 1984); *See also* <u>Kyle v. Hanberry</u>, 677 F.2d 1386 (11th Cir.

11  1982).

12  It is sufficiently clear that this wanton treatment by Defendant San Nicolas was not done of

13  necessity, but as punishment for prior personal conflict with the Plaintiff. As a result of the hindered

14  investigation and adverse administrative action which is part of a "scheme of harassment," the Plaintiff

15  now suffers a "grievous loss" and his punishment worked a fairly major change in his conditions,

16  significantly affecting his liberty  "Adverse administrative action which is part of a scheme of

17  harassment may amount to the required threats, intimidation, or coercion." <u>Smith v. Town of</u>

18  <u>Longmeadow</u>, 29 Mass. App. Ct. 599, 563 N.E.2d 697, 699 (Mass. App. Ct. 1990).

19  The actions of Defendant Quichocho stated in Plaintiff's Fourth Cause of Action (Paragraph

20  44 thru 46 and Paragraph 29) was clearly an unlawful act in excess of jurisdiction, thus, depriving the

21  Plaintiff the Constitutional right to due process of law and his right as a human being "to be treated

22  respectfully, impartially, and fairly" pursuant to <u>Executive Order 94-19</u>, Chapter 3, § 3.2.(A) *Supra*.

23  Defendant Quichocho was not appointed by the Prison Security Administrator to act as the

24  Presenting Staff in the Plaintiff's Institutional case, thus, violating clearly established standard in

25  <u>Executive Order 94-19</u>, Chapter 3, § 3.24. of which a prison official have no excuse for not knowing,

26  and which they are mandated to know. *See* <u>Executive Order 94-19</u>, Chapter 1, § 1.1.(B) *Supra*; *See*

27  *also* <u>Executive Order 88-19</u>, Chapter 11, Article 2, § 11.4. Defendant Quichocho acting as the

28  Presenting Staff in Plaintiff's Institutional case was not express or implied power given to him

and, hence, was act in excess of jurisdiction. *See e.g.* New York State Insp., Security Law Enf.
Emp., Dist. Council 82, AFSCME, AFL-CIO v. State of New York Dept. of Correctional Services,
399 N.Y.S.2d 406 (Sup. N.Y. 1977).

Prison inmates have the "right to be informed of the rules & procedures concerning the operation of the Department" Executive Order 94-19, Chapter 3, § 3.2.(B) and are entitled to expect prison officials to follow prison rules and policies, and to comply with applicable statutes." Anderson v. Smith, 697 F.2d 239 (1983); quoting Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). An Inmate is "informed of the rules, procedures, and schedules" by Defendants and their subordinates. Clearly, Defendants are presumed to know the same.

"No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the state commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453. Defendant Quichocho is forbidden by law to act as the Presenting Staff in the Plaintiff's Institutional case. Moreover, the Incident Report has no statement of the evidence relied upon and the statement of Defendant Quichocho is conclusory. In fact, Defendant Quichocho admitted to the disciplinary body that he did not see the Plaintiff punch the door.

"It has been held that written report by a prison employee standing alone does not constitute substantial evidence." Santana v. Coughlin, *Supra.* "Administrative adjudication involving rights protected by due process must be supported by substantial evidence; an unsworn hearsay document does not satisfy that requirement." Jones v. Smith, *Supra.* As a result of Defendant Quichocho unlawfully acting in excess of jurisdiction, the Plaintiff now suffers a "grievous loss" and his punishment worked a fairly major change in his conditions, significantly affecting his liberty. The Plaintiff's segregated confinement and punishment presents the type of "atypical and significant" hardship on the Plaintiff in relation to the ordinary incidents of prison life.

The actions of Defendant Ishizaki stated in Plaintiff's Fifth Cause of Action (Paragraph 47 thru 48 and Paragraph 31) clearly showed "conscious disregard" by failing to answer Plaintiff's DHB Appeal, thus, depriving Plaintiff the Constitutional right to due process of law and his right as a human being "to be treated respectfully, impartially, and fairly" pursuant to Executive Order 94-19,

Chapter 3, § 3.2.(A) *Supra.*

The regulations set forth in Executive Order 94-19 concerning "DHB Appeals" were designed to protect prisoners' "liberty interest" under the due process clause of the Fourteenth Amendment and to implement the requirements of Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The current Executive Order 94-19 [promulgated on December 30, 1994] contains sections outlining the disciplinary appeal process as follows.

Executive Order 94-19, Chapter 3, § 3.3.(C)(2):

> **"The decisions of the DHB are appealed only to the Director of Corrections."**

Executive Order 94-19, Chapter 3, § 3.30.(B):

> **"Appeals on decisions and actions by the DHB shall be made to the Director of Corrections through Administrative Remedy Request procedures."**

Executive Order 94-19, Chapter 3, § 3.30.(D):

> **"Decisions by the Director...on appeals are final."**

Executive Order 94-19, Chapter 3, § 3.32.(B).

> **"Appeals of disciplinary hearings must be answered within fifteen (15) business days of receipt."**

Plaintiff filed a timely appeal to Defendant Ishizaki. However, Defendant Ishizaki did not respond at all to Plaintiff's DHB Appeal, thus, not only violating Executive Order 94-19, but also violating the minimal due process requirements of Wolff v. McDonnell, *Supra,* and the Fourteenth Amendment right to due process of law.

The Plaintiff did not receive a response at all; not even the minimal requirements set forth in Wolff *Supra.* The "touchstone of due process" in Wolff v. McDonnell is "protection of the individual against arbitrary action of government." Id., 418 U.S. at 558. "Inmates are entitled to expect prison officials to follow prison rules and policies, and to comply with applicable statutes." Anderson v.

Smith, 697 F.2d 239 (1983); quoting Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). It has been held that "Administrators must follow their own regulations to comply with due process." Tasker v. Mohn, 267 S.E.2d 183 (W. Va. 1980). An Inmate is "informed of the rules, procedures, and schedules" by Defendants and their subordinates. Clearly, Defendants are presumed to know the same.

As a result of the failure of Defendant Ishizaki to review and consider the Plaintiff's DHB Appeal, the Plaintiff now suffers a "grievous loss" and his punishment worked a fairly major change in his conditions, significantly affecting his liberty. The Plaintiff's segregated confinement and punishment presents the type of "atypical and significant" hardship on the Plaintiff in relation to the ordinary incidents of prison life.

## IV.    VIOLATIONS OF STATE LAW ARE COGNIZABLE UNDER 42 U.S.C. § 1983.

The Defendants hold that violation of local law is not cognizable under 42 U.S.C. § 1983. However, the Defendants cited no legal authority. Plaintiff presumes that violation of local law giving rise to a constitutional violation is cognizable under 42 U.S.C. § 1983, otherwise, § 1983 would serve no useful purpose. In fact, the complaint alleges that Defendants violated Plaintiff's Constitutional rights and the violation was committed under color of law at all times relevant to this case.

## V.    PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES.

The Defendants in pages 10 thru 12 of their Memorandum of Points and Authorities alleged that the Plaintiff failed to exhaust his Administrative Remedies, incorrectly citing Chapter 16 § 16.2.(b) and § 16.3. of Executive Order 94-19 and 42 U.S.C. § 1997(e). That, however is an evidentiary issue, which may not be decided on 12(b)(6) motion.

In reality, Plaintiff properly exhausted his Administrative Remedy as are available in accordance with Administrative Law Executive Order 94-19. Moreover, Chapter 16 of Executive Order 94-19 in its entirety is absolutely different from Chapter 3 of Executive Order 94-19. Chapter 16 strictly deals with grievance complaint procedures for the ordinary issues of everyday prison life, while Chapter 3 strictly deals with Inmate Rules and Discipline and matters concerning the "DHB Appeal" process. Defendants are mistakenly mixing "Apples" with "Oranges."

To keep it simple, by law Executive Order 94-19, a complaint or grievance is a procedure strictly used for general issues or circumstances which are directed to a staff member who is responsible in that particular area of the problem, which is then taken through sequential steps if that problem is not resolved. Executive Order 94-19, Chapter 16, § 16.1.(A) provides:

> **"Most complaints can be resolved quickly and efficiently through direct contact with the staff members who are responsible in the particular area of the problem. This is the preferred course of action. Staff member awareness of the importance of prompt attention and response to these routine request will minimize the use of formal complaint procedures."**

An "Appeal" on the other hand, by law Executive Order 94-19, is the O-N-L-Y proper and legal procedure *available*, used for exhausting Administrative Remedies concerning decisions and actions taken by the Disciplinary Hearing Board (DHB). This constitutes exhaustion of remedies because Executive Order 94-19 permits no other way to exhaust issues concerning "DHB" decisions and actions except through an "Appeal," and the "Appeal" is filed only to one person authorized by law, the "Director." Ironically, Plaintiff's attempt to exhaust his administrative remedy gives rise to a cause of action in the complaint where Defendant Ishizaki has deprived Plaintiff of due process. Defendants argument is therefore, rather imperceptive.

Executive Order 94-19, Chapter 3, § 3.3.(C)(2) clearly provides:

> **"The decisions of the DHB are appealed only to the Director of Corrections."**

Executive Order 94-19, Chapter 3, § 3.30. Appeals (B) clearly provides:

> **"Appeals on decisions and actions taken by the DHB shall be made to the Director of Corrections through Administrative Remedy Request procedures."**

So the meaning and effect of the Rule is clear. Pursuant to Executive Order 94-19, Chapter 3, § 3.3.(C)(2) and Executive Order 94-19, Chapter 3, § 3.30. Appeals (B) *Supra* there is absolutely no exhaustion of administrative channel or chain of command for "DHB Appeals." Neither the Prison Security Administrator, Caseworker, nor Parole Officer has jurisdiction on "DHB Appeals" and they are not empowered to approve, hear, or review "DHB Appeals." "Without statutory authority,

subordinate officials have no power with respect to the duties of an office involving the exercise of judgment and discretion." United States v. Watashe, 102 F.2d 428-31 (10th Cir. 1939). [A] "DHB Appeal is simply from Inmate to Director, because Executive Order 94-19 specifically says so.

Therefore, Plaintiff did exhaust his Administrative Remedy, as available, by filing a "DHB Appeal" (via Administrative Remedy Request Procedure) to the Director of Corrections appealing the decisions made by the DHB. There is absolutely no factual dispute about the exhaustion of remedies.

## VI. DEFENDANTS PRESERVE NO RIGHT TO CHALLENGE PERSONAL JURISDICTION.

Defendants claim that the Plaintiff must effect personal service when Plaintiff brings a damages action against government officials in their individual capacities citing Johnston v. Horne, 875 F.2d 1415, 1424 (9th Cir. 1989) and that "a court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the Defendant" citing Stafford v. Briggs, 444 U.S. 527, 553, n.5 (1980).

Plaintiff was mercifully authorized to proceed in forma pauperis by the Honorable District Judge John S. Unpingco on December 29, 2003. Rule 4(B)(i) of the Fed. R. Civ. P. permits service to be effected by a United States marshal, deputy United States marshal, or other person or officer specially appointed by the Court for that purpose on behalf of the Plaintiff. Rule 4(B)(i) of the Fed. R. Civ. P. provides:

> **(B) A summons and complaint shall, at the request of the party seeking service or such party's attorney, be served by a United States marshal or deputy United States marshal, or by a person specially appointed by the court for that purpose, only-**

> **(i) on behalf of a party authorized to proceed in forma pauperis pursuant to Title 28 U.S.C. § 1915, or of a seaman authorized to proceed under Title 28 U.S.C. § 1916.**

"State prisoner is entitled to have summons issued and served upon prison authorities under this rule for service of process upon payment of appropriate fees." Jenks v. Henys, 378 F.2d 334 (C.A. Wash. 1967). Pursuant to Rule 4(c)(2) of the Fed. R. Civ. P., service may also be effected by

any person who is not a party and who is at least 18 years of age. In fact, "service of process on defendant prison guards by individuals who were convicted felons and incarcerated prisoners, but who were not parties to suit and who were over 18, was valid under Rule 4, dealing with service of process, in civil rights suit brought by prison inmate against guards." Benny v. Pipes, C.A.9 (Ariz) 1986, 799 F.2d 489, *amended* 807 F.2d 1514, *cert. denied* 108 S.Ct. 198, 484 U.S. 870, 98 L.Ed.2d 149. Whereas, this court obtains personal jurisdiction over the Defendants because the complaint and summons were properly served.

Moreover, Defendants filed a motion to dismiss with accompanying pleadings but argue that they are not waiving their right to challenge personal jurisdiction as a result of their motion. Defendants cannot make a special appearance for any purpose other than challenging lack of personal jurisdiction. The "principal method of attacking court's jurisdiction over Defendant is a 12(b)(2) motion" Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 490 (5th Cir. 1974), not a 12(b)(6) motion. Their failure to do so renders their appearance a waiver of any objection to lack of personal jurisdiction.

Failure to object to personal jurisdiction prior to filing a Rule 12(b)(6) motion constitutes a waiver of the objection. *See* Pardazi v. Cullman Medical Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990)(insufficient merely to object to personal jurisdiction in answer after already filing Fed. R. Civ. P. 12(b)(6) motion and omitting objections to personal jurisdiction and service of process). Defendants' disingenuous argument, therefore, should merit no consideration by the Court.

## CONCLUSION

Despite its multitude of arguments, the Defendants have not provided a legitimate reason why this Court should dismiss Plaintiff's § 1983 action. The Defendants motion to dismiss should be denied and this case should therefore be allowed to proceed forward and the facts to be determined at trial.

Finally, to the extent that there is a curable defect in the complaint, Plaintiff should be allowed

**Page 20**

to amend his complaint and assert his claim in a manner that eliminates any technical deficiencies in

the complaint.

DATED this _8TH_ day of _MARCH_, 2004.

Respectfully Submitted,

Michael Jr. G. Laguana, Pro Se,

**Michael Jr. G. Laguana, Pro Se,**
**Department of Corrections (ACF)**
**P.O. Box 3236**
**Hagatna, Guam 96932**
**Tel: (671) 734-3981 thru 9**

Page 1

Michael Jr. G. Laguana, Pro Se,
Department of Corrections (ACF)
P.O. Box 3236
Hagåtña, Guam 96932
Tel: (671) 734-3981 thru 9

*PROOF OF SERVICE (CERTIFICATE OF SERVICE)*

I, **Michael Jr. G. Laguana**, Plaintiff appearing Pro Se, hereby certify that I have served a true and correct filed copy of:

## PLAINTIFF'S OPPOSTION TO DEFENDANTS' MOTION TO DISMISS

upon Defendants' Counsel **James T. Mitchell** and addressed same to:

**James T. Mitchell, Counsel for the Defendants**
**Office of the Attorney General**
**Civil Division**
**Guam Judicial Center, Suite 2-200E**
**120 West O'Brien Drive**
**Hagåtña, Guam 96910   USA**
**(671) 475-3324      (671) 472-2493 (Fax)**

by delivering same for the above-named Counsel for the Defendants at the Office of the Attorney General, Guam Judicial Center, Suite 2-200E, 120 West O'Brien Drive in Hagatna, Guam on this 8TH day of MARCH , 2004.

I declare under Penalty of Perjury that the following is true and correct.

DATED this 8TH , day of MARCH , 2004.

By: _____
Michael Jr. G. Laguana, Pro Se

Page 1 of 1