1 | **Michael Jr. G. Laguana, Pro Se,**
**Department of Corrections**
2 | **Dairy Road, Mashburn Lane**
P.O. Box 3236
3 | Hagåtña, Guam 96932
Tel: (671) 734-3981 thru 9
4 | **Adult Correctional Facility**

**FILED**

DISTRICT COURT OF GUAM

JUN 15 2005

MARY L.M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF GUAM

### *TERRITORY OF GUAM*

Michael Jr. G. Laguana,
      Plaintiff,
    vs.

Frank Ishizaki, Director;
Francisco B. Crisostomo, Warden;
Alan San Nicolas, Corporal; at the
Guam Department of Corrections, in their
individual and official capacities,
      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No.: **CV-03-00040**

# AMENDED
# COMPLAINT

## CIVIL COMPLAINT
## WITH A JURY DEMAND

This is an Amended Complaint of a Section 1983 action under the Civil Rights Act of 1871 (Title 42 U.S.C. Section 1983) filed by **MICHAEL JR. G. LAGUANA**, an indigent inmate incarcerated at the Guam Department of Corrections in Mangilao. This action seeks damages, a declaratory judgment, and injunctive relief against the individual Defendants Frank Ishizaki, Francisco B. Crisostomo and Alan San Nicolas for violation of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

This Section 1983 action arises under the Civil Rights Act of 1871 (**42 U.S.C. Section 1983**). This Court has jurisdiction of this action under **28 U.S.C. Section 1343**. Plaintiff also invokes the pendent jurisdiction of this Court.

*ORIGINAL*

# PARTIES

1.     **MICHAEL JR. G. LAGUANA** (known hereinafter as "Plaintiff"), at all relevant times to this Complaint and when alleged violation occurred , was and is an indigent inmate incarcerated at the Guam Department of Corrections in Mangilao (known hereinafter as "DOC"), who then was and ever since has been a Citizen of the United States. Plaintiff resides at DOC, Dairy Road - Mashburn Lane, Mangilao.

2.     **FRANK ISHIZAKI** (known hereinafter as "Defendant Ishizaki"), at all relevant times to this Complaint and when alleged violation occurred, was the Director of DOC and a Citizen of the United States.    Furthermore, Defendant Ishizaki was ultimately responsible for the operation and management of DOC, and he was also responsible for the training and supervision of Correctional Personnel at DOC. He is sued in his **INDIVIDUAL CAPACITY** for monetary damages, and in his **OFFICIAL CAPACITY** for declaratory judgment and injunctive relief.   Defendant Ishizaki's address was DOC, Dairy Road - Mashburn Lane, P.O. Box 3236 Hagåtña, Guam 96932.

3.     **FRANCISCO B. CRISOSTOMO** (known hereinafter as "Defendant Crisostomo"), at all relevant times to this Complaint and when alleged violation occurred, was and is the Warden of DOC and a Citizen of the United States.   Furthermore, Defendant Crisostomo was and is ultimately responsible for the operation and management of the Adult Correctional Facility at DOC.   He was an agent and subordinate of Defendant Ishizaki. He is sued in his **INDIVIDUAL CAPACITY** for monetary damages, and in his **OFFICIAL CAPACITY** for declaratory judgment and injunctive relief.   Defendant Crisostomo's address is DOC, Dairy Road - Mashburn Lane, P.O. Box 3236 Hagåtña, Guam 96932.

3  4.  **ALAN SAN NICOLAS** (known hereinafter as "Defendant San Nicolas"), at all relevant

4  times to this Complaint and when alleged violation occurred, was and is a Corporal at DOC and a

5  Citizen of the United States. Furthermore, Defendant San Nicolas was a Unit Supervisor of the

6  Halfway House at DOC, the Chairman for the Disciplinary Hearing Board at DOC, and the Officer-

7  In-Charge of the 7am. to 3pm. shift of Halfway House Correctional Personnel at DOC. He was an

8  agent and subordinate of Defendant Ishizaki, and was and is an agent and subordinate of Defendant

9  Crisostomo. He is sued in his **INDIVIDUAL CAPACITY** for monetary damages, and in his

10  **OFFICIAL CAPACITY** for declaratory judgment and injunctive relief. Defendant San Nicolas'

11  address is DOC, Dairy Road - Mashburn Lane, P.O. Box 3236 Hagåtña, Guam 96932.

12

13  # **STATEMENT OF THE FACTS**

14  5.  **EACH** and **ALL** named-Defendants, at all relevant times to this Complaint and when

15  alleged violation occurred, have acted under "color of law" and pretense of statutes, regulations,

16  customs, and usages of Guam, and under color of authority as Government Prison Officials at

17  DOC.

18

19  6.  Plaintiff, at all relevant times to this Complaint and when alleged violation occurred,

20  exhausted all adequate and then only applicable and currently available administrative remedies by

21  filing an Appeal to DOC Director Defendant Ishizaki, on or about August 11, 2003.

22

23  7.  Chapters 10 and 11 of Guam Executive Order 88-19 was, and at all relevant times to this

24  Complaint and when alleged violation occurred, has been CLEARLY ESTABLISHED LAW

25  which ultimately describes the duties, responsibilities, and conduct of each named-Defendants in

26  the above entitled action and all DOC employees, which a reasonable person as well as the

27  persons in Defendants' position would have known, or should have known, and as a matter of

28

3 | law, has no excuse for not knowing.

4 |

5 | 8.     Chapters 10 and 11 of Guam Executive Order 88-19 was, and at all relevant times to this

6 | Complaint and when alleged violation occurred, has been CLEARLY ESTABLISHED LAW

7 | which has not been repealed, amended, or superseded.

8 |

9 | 9.     Since its promulgation on July 29, 1988, and at all relevant times to this Complaint and

10 | when alleged violation occurred, Guam Executive Order 88-19 was and has been published by

11 | DOC and all copies of it have been printed and made available to all DOC employees up and

12 | down the chain of command.

13 |

14 | 10.     Guam Executive Order 94-19 was, and at all relevant times to this Complaint and when

15 | alleged violation occurred, has been CLEARLY ESTABLISHED LAW which ultimately governs

16 | the administration and operations of DOC, which a reasonable person as well as the persons in

17 | Defendants' position would have known, or should have known, and as a matter of law, has no

18 | excuse for not knowing.

19 |

20 | 11.     Guam Executive Order 94-19 was, and at all relevant times to this Complaint and when

21 | alleged violation occurred, has been CLEARLY ESTABLISHED LAW which sets forth and

22 | describes the _Plaintiff's Rights_, which a reasonable person as well as the persons in Defendants'

23 | position would have known, or should have known, and as a matter of law, has no excuse for not

24 | knowing.

25 |

26 | 12.     Guam Executive Order 94-19 was, and at all relevant times to this Complaint and when

27 | alleged violation occurred, has been CLEARLY ESTABLISHED LAW which has not been

28 |

repealed, amended, or superseded.

13.    Since its promulgation on December 30, 1994, and at all relevant times to this Complaint and when alleged violation occurred, Guam Executive Order 94-19 was and has been published by DOC, and all copies of it have been printed and made available to all DOC employees up and down the chain of command.

14.    Plaintiff's Constitutional rights with regard to procedures to be followed before the imposition of punishment, arises under and by virtue of Chapter 3 Sections 3.2.(A)&(B), 3.3.(C)(2); Sections 3.14. thru 3.32.(B) of Guam Executive Order 94-19 dated December 30, 1994. These Procedures create a liberty interest because it places substantive limitations on official discretion and limits the circumstances under which Plaintiff may be disciplined. Plaintiff is entitled to the full panoply of these due process procedural protections found in the sections of law mentioned above.

15.    Plaintiff's Constitutional rights with regard to procedures to be followed before the imposition of punishment, arises under and by virtue of DOC's Procedural Due Process Form. A true and correct copy of that Form is attached hereto to Plaintiff's declaration and marked as Exhibit "A" and made a part hereof. These Procedures create a liberty interest because it places substantive limitations on official discretion and limits the circumstances under which Plaintiff may be disciplined. Plaintiff is entitled to the full panoply of these due process procedural protections found in the Form mentioned above.

16.    The Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit "A" and made a part hereof was, and at all relevant times to this Complaint and when

3   alleged violation occurred, has been CLEARLY ESTABLISHED LAW, which a reasonable

4   person as well as the persons in Defendants' position would have known, or should have known,

5   and as a matter of law, has no excuse for not knowing.

6

7   17.     The regulations and the language of the regulations that provide for procedures to be

8   followed before the Plaintiff's Territorially-created rights could be taken away from him, set forth

9   in Chapter 3, Sections 3.2.(A)&(B), 3.3.(C)(2), 3.30.(B)&(D) of Guam Executive Order 94-19

10  and in the Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as

11  Exhibit "A," created a protected liberty interest for the Plaintiff, because it contains substantive

12  predicates governing Defendant Ishizaki's answer to an appeal directly related to the Plaintiff, and

13  it employs "explicitly mandatory language" such as "Shall," "Will," and "Must," specifying the

14  outcome that must be reached. These regulations both place substantive limitations on official

15  discretion and limits the circumstances under which he may be disciplined.

16

17  18.     Chapter 3, Sections 3.14. Thru 3.32.(B) of Guam Executive Order 94-19 and the

18  Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit

19  "A," a Disciplinary Hearing Board Appeal (known hereinafter as "DHB Appeal") are not specific

20  prison grievance procedures. They are Published Constitutional Due Process Rights to an

21  administrative review of all disciplinary actions added to the full panoply of due process rights

22  identified in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974), which *must* be followed

23  before the imposition of punishment and before an inmate's Territorially-created right could be

24  taken away. This right of appeal was effectuated when Plaintiff was informed of its existence and

25  of the procedures to be followed if an appeal is sought. Plaintiff is entitled to the full panoply of

26  due process procedural protections mentioned above and he is not permitted to utilize a different

27  method of proceeding.

28

3  19.    Plaintiff has a Territorially-created right to education and to a reduction of his prison

4  sentence through Work-Credit Hours pursuant to Section 80.48(a) of Title 9 Guam Code

5  Annotated; Public Law P.L. 19-06; Section 81.10 of Title 9 Guam Code Annotated; Public Law

6  P.L. 19-11; and Chapter 3, Section 3.2.(J) of Guam Executive Order 94-19.  Plaintiff was given

7  these Territorially-created rights in accordance with the law and each of those rights fall within

8  that "liberty" interest embraced by the Fourteenth Amendment to the United States Constitution.

9  Accordingly, Plaintiff is entitled to the full panoply of due process procedural protections before

10  these rights could be taken away from him.

11

12  20.    Previously, and on or about August 5, 2003, Plaintiff was a Minimum-Out Custody Level

13  inmate who was a resident of the Halfway House at DOC.  As a Minimum-Out Custody Level

14  inmate at the Halfway House, Plaintiff enrolled and participated in outside education classes at the

15  Guam Community College in Mangilao and had his prison sentence reduced through Work-Credit

16  Hours pursuant to a Territorially-created right in Section 80.48(a) of Title 9 Guam Code

17  Annotated; Public Law P.L. 19-06; Section 81.10 of Title 9 Guam Code Annotated; Public Law

18  P.L. 19-11; and Chapter 3, Section 3.2.(J) of Guam Executive Order 94-19.

19

20  21.    On or about August 5, 2003, Plaintiff was removed from the Halfway House in handcuffs

21  and was brought back in to the main facility of DOC for allegedly violating institutional rules and

22  regulations.  As a result of being removed from the Halfway House, Plaintiff's Territorially-

23  created rights mentioned in Paragraph No.s **19 and 20** to include numerous privileges and

24  rehabilitation programs were taken away from him pending the completion and outcome of the

25  disciplinary process.  Plaintiff was confined to a dry and humid cell where he spent his entire time

26  alone, with the exception of one-hour each day on average for fresh air during which he

27  nonetheless remained isolated from other inmates.

28

Case 1:03-cv-00040   Document 53   Filed 06/15/2005   Page 7 of 37

3     22.     On or about August 8, 2003, Plaintiff appeared before the Disciplinary Hearing Board and

4     was found guilty of violating institutional rules and regulations. As a result of being found guilty,

5     Plaintiff's Territorially-created rights mentioned in Paragraph No.s **19 and 20** to include

6     numerous privileges and rehabilitation programs were taken away from him, and he was

7     sanctioned to serve 30 days of punishment in Disciplinary Segregation - pending the completion

8     and outcome of the final disciplinary process on appeal. Plaintiff was confined to a humid cell

9     where he spent his entire time alone, with the exception of one-hour each day on average for fresh

10    air during which he nonetheless remained isolated from other inmates and was constrained by leg

11    irons.

12

13    23.     When an inmate is alleged of violating institutional rules and regulations, he/she appears

14    before the Disciplinary Hearing Board. If the DHB finds an inmate guilty of an institutional

15    violation, he/she is stripped of all rights, privileges, and programs and placed in Disciplinary

16    Segregation pending the completion and outcome of the final disciplinary process on appeal if an

17    appeal is sought. An answer to an appeal contains the specific rule(s) violated or followed; the

18    specific evidence relied on; and the reasons for the disciplinary actions. An answer creates a

19    protected liberty interest because it places substantive limitations on official discretion and it limits

20    the circumstances under which Plaintiff may be disciplined. Equally important, it determines if an

21    inmate's Territorially-created rights would be taken away from him and if he/she would continue

22    to serve punishment in Disciplinary Segregation and face demotion to a lower custody level or,

23    whether he/she would be exonerated of the punishment imposed and immediately returned to

24    his/her previous status.

25

26    24.     On or about August 11, 2003, while serving his 30 day sanction in Disciplinary

27    Segregation, Plaintiff exhausted the full and final panoply of due process procedural protections

28

3  set forth in Chapter 3, Section 3.14. thru 3.32.(B) of Guam Executive Order 94-19 and in the

4  Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit

5  "A," by filing a DHB Appeal to Defendant Ishizaki concerning DHB Case No. DHB2003-08-100.

6

7  25.    Plaintiff reasonably relied on the full panoply of due process procedural protections set

8  forth in Chapter 3, Section 3.14. thru 3.32.(B) of Guam Executive Order 94-19 and in the

9  Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit

10  "A," when he filed his DHB Appeal to Defendant Ishizaki on or about August 11, 2003

11  concerning DHB Case No. DHB2003-08-100.

12

13  26.    After filing a DHB Appeal, Plaintiff waited 15 business days for an answer from

14  Defendant Ishizaki. Defendant Ishizaki's answer to Plaintiff's DHB Appeal would have contained

15  the specific rule(s) violated or followed; the specific evidence relied on; and the reasons for the

16  disciplinary actions. Defendant Ishizaki's answer to Plaintiff's DHB Appeal creates a protected

17  liberty interest because it places substantive limitations on official discretion and it limits the

18  circumstances under which Plaintiff may be disciplined. Equally important, Defendant Ishizaki's

19  answer would determine if Plaintiff's Territorially-created rights would be taken away from him

20  and if Plaintiff would continue to serve his 30 day sanction in Disciplinary Segregation and face

21  *demotion to a lower custody level or, whether Plaintiff would be exonerated of the punishment*

22  *imposed and immediately returned to the Halfway House with all rights, privileges and programs*

23  *restored.*

24

25  27.    To comply with the full and final panoply of due process procedural protections before the

26  Plaintiff's Territorially-created rights could be taken away from him, Chapter 3, Section 3.32.(B)

27  of Guam Executive Order 94-19 and the Procedural Due Process Form attached hereto to

28

Case 1:03-cv-00040    Document 53    Filed 06/15/2005    Page 9 of 37

3  Plaintiff's declaration and marked as Exhibit "A" provides that Defendant Ishizaki "Must" answer

4  the Plaintiff's DHB Appeal within 15 business days. However, in the course of thus operating

5  and managing DOC on or about August 11, 2003, and continuously thereafter to this very day,

6  Defendant Ishizaki failed to afford Plaintiff the full and final panoply of due process procedural

7  protections which he was entitled to as a matter of law, when he failed adequately to answer and

8  serve Plaintiff's DHB Appeal within 15 business days, which would have contained a written

9  statement of the specific rules(s) violated or followed, a written statement of the specific evidence

10  relied on, and the reasons for the disciplinary action.

11

12  28.     Pursuant to Chapter 3, Section 3.32.(B) of Guam Executive Order 94-19 and the

13  Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit

14  "A," Defendant Ishizaki *must* answer Plaintiff's DHB Appeal within 15 business days. However,

15  from August 11, 2003 and continuously thereafter to this very day, Plaintiff did not receive an

16  answer to his DHB Appeal.     If Plaintiff received an answer to his DHB Appeal from Defendant

17  Ishizaki, Plaintiff would have known the specific rule(s) violated or followed; the specific

18  evidence relied upon; and the reasons for the disciplinary action - and he would know whether his

19  Territorially-created rights would be taken away from him and that he would continue to serve his

20  30 day sanction in Disciplinary Segregation and face demotion to a lower custody level or,

21  whether he would be exonerated of the punishment imposed and immediately returned to the

22  Halfway House with all rights, privileges and programs restored.

23

24  29.     On or about February 2002 and continuously thereafter, former Director of Corrections

25  Angel Sablan ("Sablan") failed to comply with the Plaintiff's full and final panoply of due process

26  procedural protections in Chapter 3, Section 3.32.(B) of Guam Executive Order 94-19 and in the

27  Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit

28

"A," because he did not answer and serve Plaintiff's DHB Appeal within 15 business days. As a result of Sablan's failure to answer and serve Plaintiff's DHB Appeal within 15 business days, former Acting Director of Corrections Ted Lewis and Acting Director of Corrections Robert Camacho, on or about August 2002, immediately exonerated the Plaintiff of his punishment and returned him back to the Halfway House with all his Territorially-created rights, privileges, and programs restored to him because they recognized that Plaintiff did not receive the full and final panoply of due process procedural protections mentioned above which he was entitled to as a matter of law.

30.     Previously, and at all relevant times to this Complaint and when alleged violation occurred, previous and present DOC Directors or Acting Directors have answered and served inmates their DHB Appeals within 15 business days to comply with the full and final panoply of due process procedural protections in Chapter 3, Section 3.32.(B) of Guam Executive Order 94-19, and in the Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit "A," which the Plaintiff and all other inmates similarly situated are entitled to as a matter of law.

31.     Previously, and at all relevant times to this Complaint and when alleged violation occurred, the Plaintiff, and all other DOC inmates similarly situated who did not receive the full and final panoply of due process procedural protections mentioned in Paragraph No.s **29 and 30** because their DHB Appeals were not answered and served within 15 business days, were exonerated of their punishment and returned to their previous status' by previous and present DOC Directors or Acting Directors and by Court Settlements offered by the Guam Attorney General's Office through their own Assistant Attorney General James T. Mitchell. _See,_ Laguana v. Sablan, Dismissal Order SP183-02 (Superior Ct. of Guam 2003).

32.     Previously between December 2001 and October 2002, Plaintiff, through personal contact, telephone and grievance or otherwise notification, informed his Caseworker Mark T. Perez; former Director of Corrections Angel Sablan; former Acting Director of Corrections Ted Lewis; and Warden of Corrections Defendant Crisostomo, that he was being treated unfairly and was constantly harassed by certain Correctional Officers (known hereinafter as "Officer(s)") assigned to the Halfway House and that he has conflict of interest with them.

33.     When operating and managing the Adult Correctional Facility at DOC, Defendant Crisostomo protects every inmate at DOC who have conflict with each other by separating them and placing them (according to the severity) in separate housing facilities such as the Administrative Segregation Unit in the main facility at DOC, the Minimum-In Facility at DOC, the Halfway House Facility at DOC, or the Detention Facility in Hagåtña.  Equally important, Defendant Crisostomo also protects every inmate at DOC who have conflict with an Officer, by either reassigning the Officer to another Facility or Post, or by preventing the transfer of an inmate to the Unit or Facility where the Officer - he/she has conflict with - is assigned to.

34.     Previously, on or about September 2002 or October 2002, Plaintiff filed grievance, or otherwise, provided notification to Defendant Crisostomo concerning previous harassment and unfair treatment that Plaintiff suffered and endured from certain Officers assigned to the Halfway House.  In his grievance, Plaintiff asked Defendant Crisostomo for the same treatment and protection which he has given other inmates similarly situated, by: 1) reassigning those Officers whom Plaintiff had conflict with before transferring Plaintiff back to the Halfway House; or 2) by allowing the Plaintiff to remain at the Minimum-In Facility or transfer the Plaintiff to the Detention Facility in Hagåtña.

3  35.    Previously, on or about October 2002, Defendant Crisostomo telephoned the Plaintiff and

4  spoke to him concerning the grievance or notification which he filed on or about September 2002

5  or October 2002.  Plaintiff asked Defendant Crisostomo for the same treatment and protection

6  which he has given other inmates similarly situated, by:  1) reassigning those Officers whom

7  _Plaintiff had conflict with before transferring Plaintiff back to the Halfway House; or 2) by_

8  _allowing the Plaintiff to remain at the Minimum-In Facility.  Recognizing that Plaintiff's request_

9  _for equal treatment and protection was reasonable and in the interest of safety and security,_

10 _Defendant Crisostomo assured the Plaintiff that he will remain at the Minimum-In Facility for his_

11 safety; an action of safety concern which Defendant Crisostomo has done for other inmates

12 similarly situated.

13

14 36.    Although he knew that a conflict of interest existed between the Plaintiff and certain

15 Officers assigned to the Halfway House - and that a risk of harm reasonably existed to befall the

16 Plaintiff, Defendant Crisostomo, in the course of thus operating and managing the Adult

17 Correctional Facility at DOC as Warden on or about November 2002, reneged on his assurance

18 for equal treatment and protection and transferred the Plaintiff back to the Halfway House.

19

20 37.    No Officer at DOC has ever participated in every stage of proceeding of an inmate's DHB

21 Case.

22

23 38.    Every inmate at DOC similarly situated who had a DHB Case, never once had a particular

24 Officer participate in every stage of proceeding of their DHB Case.

25

26 39.    Defendant San Nicolas never participated in every stage of proceeding of an inmate's

27 DHB Case.

28

3  40.    Defendant San Nicolas participated, and in fact was the only Officer who participated, in

4  every stage of proceeding of the Plaintiff's DHB Case. Defendant San Nicolas, who was the

5  primary actor and prime movant behind his discriminatory intent:

6        a)    Counseled Plaintiff on or about August 5, 2003 about an Informational Report
              concerning a loud band which Officers R. I. Quichocho and M. A. Reyes heard on
7                or about 5:50p.m. on August 5, 2003;

8        b)    Initiated the Charging Process against the Plaintiff on or about August 5, 2003 for
              a loud bang which his Officers heard on or about 5:50p.m. on August 5, 2003;

9
      c)    Ordered the Plaintiff, on August 5, 2003, to be placed in handcuffs; to be removed
10               from the Halfway House; to be returned to the main facility at DOC; and to be
              placed on Pre-Hearing Detention, for a loud bang which his Officers heard on or
11               about 5:50p.m. on August 5, 2003;

12       d)    Ordered Officer R. I. Quichocho on or about the 5th or 6th of August 2003, to write
              an Incident Report against the Plaintiff for a loud bang which he heard on or about
13               5:50p.m. on August 5, 2003;

14       e)    Became the Investigating Supervisor in Plaintiff's DHB Case on or about 8:40a.m.
              on August 6, 2003, and investigated his own charges which he initiated against the
15               Plaintiff on August 5, 2003 for a loud bang which his Officers heard;

16       f)    Sat in judgment on his own complaint and charges as a decision maker against the
              Plaintiff on or about 10:00a.m. on August 6, 2003, and decided not to dismiss his
17               own charges which he made against the Plaintiff;

18       g)    Appeared again at Plaintiff's DHB hearing on or about 10:23a.m. on August 8,
              2003, and presided over the hearing as Chairman.
19

20  41.   The Investigative stage in a disciplinary proceeding is a stage when an Officer becomes

21  both a fact finder and a decision maker. As a fact finder, the Officer affords an inmate his/her

22  right to present evidence on his/her own behalf. Then as a decision maker, the Officer then

23  reviews all evidence presented to him/her and impartially decides whether or not to dismiss the

24  inmate's DHB Case.

25

26  42.   There have been inmates at DOC similarly situated as the Plaintiff, who had their DHB

27  Cases dismissed by the decision maker in the Investigative stage of their disciplinary proceeding,

28

3   because the decision maker was impartial and he/she had no part whatsoever in the Charging

4   Process and had no personal involvement and knowledge of the incident giving rise to the

5   disciplinary proceeding.

6

7   43.     The Plaintiff had a DHB Case against him dismissed by the decision maker in the

8   Investigative stage of his disciplinary proceeding, because the decision maker was impartial and he

9   had no part whatsoever in the Charging Process and had no personal involvement and knowledge

10   of the incident giving rise to the disciplinary proceeding.

11

12   44.     Defendant San Nicolas, who was both the fact finder and the decision maker in the

13   Investigative stage of the Plaintiff's DHB Case, hindered the Plaintiff's right to present evidence

14   on his own behalf and refused to dismiss his own complaint and charges that he made against the

15   Plaintiff. Defendant San Nicolas, as the decision maker in the Plaintiff's DHB Case, was not

16   impartial, because Defendant San Nicolas was the primary actor and the prime movant who

17   initiated the Charging Process against the Plaintiff and had personal involvement and knowledge

18   of the incident giving rise to the Plaintiff's disciplinary proceeding.

19

20   45.     **EACH** and **ALL** Defendants are not entitled to qualified immunity because each of them,

21   at the time of conduct at issue, knew that Plaintiff's Constitutional rights, including but not limited

22   to, Plaintiff's rights found in Guam Executive Order 94-19 and in the Procedural Due Process

23   Form attached hereto to Plaintiff's declaration and marked as Exhibit "A," were CLEARLY

24   ESTABLISHED.

25

26

27

28

# CLAIMS
# FIRST CAUSE OF ACTION

46.     Plaintiff collectively restates and re-alleges Paragraph No.s **1 and 2, 5 thru 31 and 45** in his First Cause of Action against Defendant Ishizaki as hereinafter more fully appears.

47.     *The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.* Plaintiff reasonably relied on Chapter 3, Section 3.2.(A) of Guam Executive Order 94-19 and on the facts asserted in Paragraph No.s **29 and 31** to believe that he will be exonerated of his punishment and returned to the Halfway House with all rights, privileges, and programs restored, which previous and present DOC Directors or Acting Directors and Assistant Attorney General James T. Mitchell (through court settlements) had previously done for all inmates, including the Plaintiff, whose DHB Appeals were not answered within 15 business days. Defendant Ishizaki's action stated in Paragraph No. **27** constitutes a discriminatory intent to deprive Plaintiff his rights under color of law and arguably amounts to a denial of equal protection,  because the Plaintiff was not exonerated of his punishment and returned to the Halfway House which previous and present DOC Directors or Acting Directors and Assistant Attorney General James T. Mitchell had previously done for all inmates, including the Plaintiff, whose DHB Appeals were not answered within 15 business days.  As a result of Defendant Ishizaki's action of discriminatory intent stated in Paragraph No. **27**, Plaintiff's Territorially-created rights mentioned in Paragraph No.s **19 and 20** were taken away from him without the equal protection of the laws.

3  48.      The Due Process Clause of the Fourteenth Amendment to the United States Constitution

4  guarantees Plaintiff protection from arbitrary government actions that deprive him of life, liberty

5  or property without due process of law.  Plaintiff reasonably relied on Chapter 3, Sections

6  3.2.(A)&(B), 3.3.(C)(2); Sections 3.14. thru 3.32.(B) of Guam Executive Order 94-19 and the

7  *Procedural Due Process Form attached hereto to Plaintiff's declaration and marked as Exhibit*

8  *"A," both of which contain the full panoply of due process procedural protections to be followed*

9  *before his Territorially-created rights mentioned in Paragraph No.s* **19 and 20** *can be taken away*

10  *from him. As a result of Defendant Ishizaki's arbitrary actions stated in Paragraph No.* **27,**

11  Plaintiff did not receive the full panoply of due process procedural protections above which he

12  was entitled to as a matter of law and his Territorially-created rights mentioned in Paragraph No.

13  **19 and 20** were taken away from him without due process of law.

14

15  49.      In prison disciplinary proceedings, due process requires a written statement as to the

16  evidence relied on and the reasons for the disciplinary action.  As a result of Defendant Ishizaki's

17  arbitrary action state in Paragraph No. **27**, Defendant Ishizaki failed adequately to provide

18  Plaintiff with a written statement as to the evidence relied on and the reasons for the disciplinary

19  action, and Plaintiff's Territorially-created rights stated in Paragraph No.s **19 and 20** were taken

20  away from him without due process of law.

21

22  50.      Defendant Ishizaki who was a primary actor involved and a prime movant behind his

23  underlined violations herein mentioned, knowingly violated Plaintiff's CLEARLY

24  ESTABLISHED Constitutional rights set forth in Chapter 3, Sections 3.2.(A)&(B), 3.3.(C)(2);

25  Sections 3.14. thru 3.32.(B) of Guam Executive Order 94-19 and in the Procedural Due Process

26  Form attached hereto to Plaintiff' declaration and marked as Exhibit "A."   Defendant Ishizaki, at

27  all relevant times, was in a position to correct his errors, but he failed to correct his errors and

28

Case 1:03-cv-00040   Document 53   Filed 06/15/2005   Page 17 of 37

3 | establish ways of dealing with the problems he knew about.

4 |

5 | 51.     Prior to Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s

6 | **46 thru 50**, Plaintiff was a Minimum-Out inmate at the Halfway House who enrolled and

7 | participated in outside college courses at the Guam Community College in Mangilao (GCC) by

8 | virtue of a Territorially-created right under Section 80.48(a) of Title 9 Guam Code Annotated,

9 | Public Law P. L. 19-06, and Chapter 3, Section 3.2.(J) of Guam Executive Order 94-19.  Plaintiff

10 | was capable of earning and actually earning an approximate of $4,000.00 per Semester Year and a

11 | monetary income check of approximately $400.00 twice per Semester after deduction, and 3

12 | Credit Hours per Class completed for an Associate's Degree in Supervision & Management.  As a

13 | result of Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s **46 thru**

14 | **50**, Plaintiff, as of August 5, 2003 to this very day:

15 |          a)     is no longer a Minimum-Out inmate at the Halfway House;

16 |          b)     can no longer enroll and participate in outside education college courses at GCC;

17 |          c)     can no longer earn 3 Credit Hours per Class completed for an Associate's Degree
in Supervision & Management; and

18 |

19 |          d)     can no longer receive monetary income.

20 |

21 | 52.     Prior to Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s

22 | **46 thru 50**, Plaintiff was a Minimum-Out inmate at the Halfway House who had his prison

23 | sentence reduced by virtue of a Territorially-created right under Section 81.10 of Title 9 Guam

24 | Code Annotated, Public Law P. L. 19-11, and Chapter 3, Section 3.2.(J) of Guam Executive

25 | Order 94-19.  Plaintiff was capable of earning and actually earning 01 day off his prison sentence

26 | for every 40 hours of work performed.  Plaintiff worked at the Guam Office of Civil Defense and

27 | at numerous places around the Island of Guam.  As a result of Defendant Ishizaki's underlined

28 | violations collectively stated in Paragraph No.s **46 thru 50**, Plaintiff, as of August 5, 2003 to this

very day:

    a)     is no longer a Minimum-Out inmate at the Halfway House;

    b)     can no longer have his prison sentence reduced; and

    c)     can no longer work at the Guam Office of Civil Defense and at numerous places around the Island of Guam.

53.    As a result of Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s **46 thru 50**, Plaintiff:

    a)     was permanently removed from the Halfway House;

    b)     permanently lost his Territorially-created rights to education and to a reduction of his prison sentence;

    c)     suffered 30 days of physical and psychological punishment in Disciplinary Segregation;

    d)     suffered demotion to a more restricted and lower Custody Level and remains demoted to a more restricted and lower Custody Level; and

    e)     suffered adverse administrative effects through a series of additional physical and psychological punishment in Disciplinary Segregation ranging from 40 days, to 60 days, and 140 days.

54.    As a result of Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s **46 thru 50**, Plaintiff has been subjected, or was caused to be subjected to a once-a-month treatment at the Guam Mental Health Facility, where he is seen by Dr. Leon Guerrero, Dr. Somiah, Dr. Redding, and Dr. Post, who then prescribes the Plaintiff with antidepressant medications such as Zoloft, Trazadone, Klonopin, and Benadryl, to treat the depression, anxiety, emotional distress and pain, sleep deprivation, and insomnia that he suffered and endured and which he continues to suffer and endure.

55.    As a result of Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s **46 thru 50**, Plaintiff has been subjected, or was caused to be subjected to a series of

3  Psychological counseling at DOC where he is frequently seen by Dr. George Kallingal, who then

4  tries to help the Plaintiff cope with the depression, anxiety, and emotional distress and pain that he

5  suffered and endured and which he continues to suffer and endure.

6

7  56.  Prior to Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s

8  **46 thru 50,** Plaintiff enjoyed the benefits of his Territorially-created rights to education and to a

9  reduction of his prison sentence, numerous rehabilitation programs, numerous community sports

10 and activities, physical liberty, and numerous privileges, which every inmate in the main facility of

11 DOC cannot enjoy or benefit from because of their crimes or the laws that prohibit them.  As a

12 result of Defendant Ishizaki's underlined violations collectively stated in Paragraph No.s **46 thru**

13 **50,** Plaintiff was and ever since has been reclassified and housed among every inmate in the main

14 facility of DOC who cannot enjoy or benefit from the rights, privileges, programs and physical

15 liberty because of their crimes or the laws that prohibit them.  It is sufficiently clear that Plaintiff

16 suffered a grievous loss and his punishment worked a fairly major change in his conditions;

17 significantly affecting his liberty.  Plaintiff's segregated confinement presents the type of "atypical

18 and significant" hardship on the him in relation to the ordinary incidents of prison life.

19

20 57.  As a direct and proximate cause of Defendant Ishizaki's underlined violations collectively

21 stated in Paragraph No.s **46 thru 50,** Plaintiff suffered a series of adverse administrative effects,

22 inconvenience, unfairness, and has suffered damages, including but not limited to, actual

23 pecuniary damages and actual non pecuniary damages in the form of direct and indirect injury to

24 Plaintiff's Classification Level, anxiety, ridicule, physical upset, depression, insomnia, emotional

25 distress, past-present-and future loss of monetary income, and damage to career and educational

26 progression.

27

28

1    *Laguana v. Ishizaki, et. al.*, CV-03-00040
     **AMENDED COMPLAINT**
2    Page 21

# SECOND CAUSE OF ACTION

3

4    58.    Plaintiff collectively restates and re-alleges Paragraph No.s **1 and 3, 5 thru 13, 17, 19**

5    **and 20, 32 thru 36** in his Second Cause of Action against Defendant Crisostomo as hereinafter

6    more fully appears.

7

8    59.    The Equal Protection Clause of the Fourteenth Amendment to the United States

9    Constitution provides that no state shall deny to any person within its jurisdiction the equal

10    protection of the laws, which is essentially a direction that all persons similarly situated should be

11    treated alike. Plaintiff reasonably relied on Chapter 3, Section 3.2.(A) of Guam Executive Order

12    94-19 and on the facts asserted in Paragraph No.s **33 and 35** to believe that he will be given the

13    same treatment and protection that Defendant Crisostomo has given other inmates similarly

14    situated. Defendant Crisostomo's action stated in Paragraph No. **36** constitutes a discriminatory

15    intent to deprive Plaintiff his rights under color of law and arguably amounts to a denial of equal

16    protection because Plaintiff was not given the same treatment and protection that Defendant

17    Crisostomo has given other inmates similarly situated. As a result of Defendant Crisostomo's

18    action of discriminatory intent stated in Paragraph No. **36**, Plaintiff's Territorially-created rights

19    mentioned in Paragraph No.s **19 and 20** were taken away from him without the equal protection

20    of the laws.

21

22    60.    *Defendant Crisostomo who was a primary actor involved and a prime movant behind his*

23    *underlined violations herein mentioned, knowingly violated Plaintiff's CLEARLY*

24    *ESTABLISHED Constitutional rights set forth in Chapter 3, Sections 3.2.(A) of Guam Executive*

25    *Order 94-19. Defendant Crisostomo, at all relevant times, was in a position to correct his errors,*

26    *but he failed to correct his errors and establish ways of dealing with the problems he knew about.*

27

28

3    61.    Prior to Defendant Crisostomo's underlined violations collectively stated in Paragraph

4    No.s **58 thru 60**, Plaintiff was a Minimum-Out inmate at the Halfway House who enrolled and

5    participated in outside college courses at the Guam Community College in Mangilao (GCC) by

6    virtue of a Territorially-created right under Section 80.48(a) of Title 9 Guam Code Annotated,

7    Public Law P. L. 19-06, and Chapter 3, Section 3.2.(J) of Guam Executive Order 94-19. Plaintiff

8    was capable of earning and actually earning an approximate of $4,000.00 per Semester Year and a

9    monetary income check of approximately $400.00 twice per Semester after deduction, and 3

10   Credit Hours per Class completed for an Associate's Degree in Supervision & Management. As a

11   result of Defendant Crisostomo's underlined violations collectively stated in Paragraph No.s **58**

12   **thru 60**, Plaintiff, as of August 5, 2003 to this very day:

13          a)     is no longer a Minimum-Out inmate at the Halfway House;

14          b)     can no longer enroll and participate in outside education college courses at GCC;

15          c)     can no longer earn 3 Credit Hours per Class completed for an Associate's Degree
                   in Supervision & Management; and

16          d)     can no longer receive monetary income.

17

18   62.    Prior to Defendant Crisostomo's underlined violations collectively stated in Paragraph

19   No.s **58 thru 60**, Plaintiff was a Minimum-Out inmate at the Halfway House who had his prison

20   sentence reduced by virtue of a Territorially-created right under Section 81.10 of Title 9 Guam

21   Code Annotated, Public Law P. L. 19-11, and Chapter 3, Section 3.2.(J) of Guam Executive

22   Order 94-19. Plaintiff was capable of earning and actually earning 01 day off his prison sentence

23   for every 40 hours of work performed. Plaintiff worked at the Guam Office of Civil Defense and

24   at numerous places around the Island of Guam. As a result of Defendant Crisostomo's underlined

25   violations collectively stated in Paragraph No.s **58 thru 60**, Plaintiff, as of August 5, 2003 to this

26   very day:

27          a)     is no longer a Minimum-Out inmate at the Halfway House;

28

      b)    can no longer have his prison sentence reduced; and

      c)    can no longer work at the Guam Office of Civil Defense and at numerous places around the Island of Guam.

63.    As a result of Defendant Crisostomo's underlined violations collectively stated in Paragraph No.s **58 thru 60**, Plaintiff:

      a)    was permanently removed from the Halfway House;

      b)    permanently lost his Territorially-created rights to education and to a reduction of his prison sentence;

      c)    suffered 30 days of physical and psychological punishment in Disciplinary Segregation;

      d)    suffered demotion to a more restricted and lower Custody Level and remains demoted to a more restricted and lower Custody Level; and

      e)    suffered adverse administrative effects through a series of additional physical and psychological punishment in Disciplinary Segregation ranging from 40 days, to 60 days, and 140 days.

64.    As a result of Defendant Crisostomo's underlined violations collectively stated in Paragraph No.s **58 thru 60**, Plaintiff has been subjected, or was caused to be subjected to a once-a-month treatment at the Guam Mental Health Facility, where he is seen by Dr. Leon Guerrero, Dr. Somiah, Dr. Redding, and Dr. Post, who then prescribes the Plaintiff with antidepressant medications such as Zoloft, Trazadone, Klonopin, and Benadryl, to treat the depression, anxiety, emotional distress and pain, sleep deprivation, and insomnia that he suffered and endured and which he continues to suffer and endure.

65.    As a result of Defendant Crisostomo's underlined violations collectively stated in Paragraph No.s **58 thru 60**, Plaintiff has been subjected, or was caused to be subjected to a series of Psychological counseling at DOC where he is frequently seen by Dr. George Kallingal, who then tries to help the Plaintiff cope with the depression, anxiety, and emotional distress and pain

3 | that he suffered and endured and which he continues to suffer and endure.

4 |

5 | 66. Prior to Defendant Crisostomo's underlined violations collectively stated in Paragraph

6 | No.s **58 thru 60,** Plaintiff enjoyed the benefits of his Territorially-created rights to education and

7 | to a reduction of his prison sentence, numerous rehabilitation programs, numerous community

8 | sports and activities, physical liberty, and numerous privileges, which every inmate in the main

9 | facility of DOC cannot enjoy or benefit from because of their crimes or the laws that prohibit

10 | them. As a result of Defendant Crisostomo's underlined violations collectively stated in

11 | Paragraph No.s **58 thru 60,** Plaintiff was and ever since has been reclassified and housed among

12 | every inmate in the main facility of DOC who cannot enjoy or benefit from the rights, privileges,

13 | programs and physical liberty because of their crimes or the laws that prohibit them. It is

14 | sufficiently clear that Plaintiff suffered a grievous loss and his punishment worked a fairly major

15 | change in his conditions; significantly affecting his liberty. Plaintiff's segregated confinement

16 | presents the type of "atypical and significant" hardship on the him in relation to the ordinary

17 | incidents of prison life.

18 |

19 | 67. As a direct and proximate cause of Defendant Crisostomo's underlined violations

20 | collectively stated in Paragraph No.s **58 thru 60,** Plaintiff suffered a series of adverse

21 | administrative effects, inconvenience, unfairness, and has suffered damages, including but not

22 | limited to, actual pecuniary damages and actual non pecuniary damages in the form of direct and

23 | indirect injury to Plaintiff's Classification Level, anxiety, ridicule, physical upset, depression,

24 | insomnia, emotional distress, past-present-and future loss of monetary income, and damage to

25 | career and educational progression.

26 |

27 |

28 |

3  # THIRD CAUSE OF ACTION

4  68.  Plaintiff collectively restates and re-alleges Paragraph No.s **1and 4, 5 thru 13, and 37**

5  **thru 45** in his Third Cause of Action against Defendant San Nicolas as hereinafter more fully

6  appears.

7

8  69.  *The Equal Protection Clause of the Fourteenth Amendment to the United States*

9  *Constitution provides that no state shall deny to any person within its jurisdiction the equal*

10  *protection of the laws, which is essentially a direction that all persons similarly situated should be*

11  treated alike.  Plaintiff reasonably relied on Chapter 3, Sections 3.2.(A) and 3.26. of Guam

12  Executive Order 94-19 and on the facts asserted in Paragraph No.s **37 thru 39 and 41 thru 43**,

13  to believe that he will be given the same treatment and same fair chance to be impartially heard,

14  that he and all other inmates similarly situated were given before under proceedings that gave

15  them their rights mentioned above.  Defendant San Nicolas' action stated in Paragraph No.s **40**

16  **and 44** constitutes a discriminatory intent to deprive Plaintiff his rights under color of law and

17  arguably amounts to a denial of equal protection, because Plaintiff was not given a fair chance to

18  be impartially heard, and his rights mentioned above were hindered.  As a result of Defendant San

19  Nicolas' action of discriminatory intent, the Plaintiff's Territorially-created rights mentioned in

20  Paragraph No.s **19 and 20** were taken away from him without the equal protection of the laws.

21

22  70.  In prison disciplinary proceedings, the fundamental tenants of the Due Process Clause to

23  the Fourteenth Amendment of the United States Constitution logically require, that an inmate be

24  entitled to a fair and impartial decision maker who has had no direct personal involvement in the

25  incident that is the subject of the hearing.  In believing that he would be given this due process

26  requirement under an impartial proceeding, Plaintiff reasonably relied on Chapter 3, Sections

27  3.2.(A) and 3.26. of Guam Executive Order 94-19, the facts asserted in Paragraph No.s **41 thru**

28

3 **43**, and decisions made by various circuit courts in the United States Court of Appeals which held

4 that a decision maker: 1) must not have personal knowledge of the incident giving rise to the

5 proceeding; 2) must not have been involved in the Charging Process; and 3) is forbidden from

6 sitting in judgment of his own complaints and charges in disciplinary proceedings. The facts

7 asserted in paragraph No.s **40 and 44** indicate that Defendant San Nicolas not only had direct

8 personal involvement and knowledge in the Charging Process and Investigative stage and in every

9 stage of the Plaintiff's DHB Case, but as a decision maker, he also sat in judgment of his own

10 complaint and charges against the Plaintiff, and arrived at a decree of prejudgment resulting from

11 that investigation. As a result of Defendant San Nicolas' arbitrary actions stated in Paragraph

12 No.s **40 and 44**, the Plaintiff's Territorially-created rights mentioned in Paragraph No.s **19 and**

13 **20** were taken away from him without due process of law, because he was not given an impartial

14 decision maker, he was not impartially heard, and his rights mentioned above were hindered as a

15 result thereof. Had there been another investigator and decision maker besides Defendant San

16 Nicolas, the outcome of Plaintiff's DHB Case would have been different and his DHB Case would

17 have been dismissed.

18

19 71.     Defendant San Nicolas who was a primary actor involved and a prime movant behind his

20 underlined violations herein mentioned, knowingly violated Plaintiff's CLEARLY

21 ESTABLISHED Constitutional rights set forth in Chapter 3, Sections 3.2.(A) of Guam Executive

22 Order 94-19. Defendant San Nicolas, at all relevant times, was in a position to correct his errors,

23 but he failed to correct his errors and establish ways of dealing with the problems he knew about.

24

25 72.     Prior to Defendant San Nicolas' underlined violations collectively stated in Paragraph

26 No.s **68 thru 70**, Plaintiff was a Minimum-Out inmate at the Halfway House who enrolled and

27 participated in outside college courses at the Guam Community College in Mangilao (GCC) by

28

3  virtue of a Territorially-created right under Section 80.48(a) of Title 9 Guam Code Annotated,

4  Public Law P. L. 19-06, and Chapter 3, Section 3.2.(J) of Guam Executive Order 94-19. Plaintiff

5  was capable of earning and actually earning an approximate of $4,000.00 per Semester Year and a

6  monetary income check of approximately $400.00 twice per Semester after deduction, and 3

7  Credit Hours per Class completed for an Associate's Degree in Supervision & Management. As a

8  result of Defendant San Nicolas' underlined violations collectively stated in Paragraph No.s **68**

9  **thru 70**, Plaintiff, as of August 5, 2003 to this very day:

10          a)      is no longer a Minimum-Out inmate at the Halfway House;

11          b)      can no longer enroll and participate in outside education college courses at GCC;

12          c)      can no longer earn 3 Credit Hours per Class completed for an Associate's Degree
                    in Supervision & Management; and

13          d)      can no longer receive monetary income.

14

15  73.     Prior to Defendant San Nicolas' underlined violations collectively stated in Paragraph

16  No.s **68 thru 70**, Plaintiff was a Minimum-Out inmate at the Halfway House who had his prison

17  sentence reduced by virtue of a Territorially-created right under Section 81.10 of Title 9 Guam

18  Code Annotated, Public Law P. L. 19-11, and Chapter 3, Section 3.2.(J) of Guam Executive

19  Order 94-19. Plaintiff was capable of earning and actually earning 01 day off his prison sentence

20  for every 40 hours of work performed. Plaintiff worked at the Guam Office of Civil Defense and

21  at numerous places around the Island of Guam. As a result of Defendant San Nicolas' underlined

22  violations collectively stated in Paragraph No.s **68 thru 70**, Plaintiff, as of August 5, 2003 to this

23  very day:

24          a)      is no longer a Minimum-Out inmate at the Halfway House;

25          b)      can no longer have his prison sentence reduced; and

26          c)      can no longer work at the Guam Office of Civil Defense and at numerous places
                    around the Island of Guam.

27

28

3   74.    As a result of Defendant San Nicolas' underlined violations collectively stated in

4   Paragraph No.s **68 thru 70**, Plaintiff:

5       a)    was permanently removed from the Halfway House;

6       b)    permanently lost his Territorially-created rights to education and to a reduction of
        his prison sentence;

7
8       c)    suffered 30 days of physical and psychological punishment in Disciplinary
        Segregation;

9       d)    suffered demotion to a more restricted and lower Custody Level and remains
        demoted to a more restricted and lower Custody Level; and

10
11      e)    suffered adverse administrative effects through a series of additional physical and
        psychological punishment in Disciplinary Segregation ranging from 40 days, to 60
        days, and 140 days.

12

13  75.    As a result of Defendant San Nicolas' underlined violations collectively stated in

14  Paragraph No.s **68 thru 70**, Plaintiff has been subjected, or was caused to be subjected to a once-

15  a-month treatment at the Guam Mental Health Facility, where he is seen by Dr. Leon Guerrero,

16  Dr. Somiah, Dr. Redding, and Dr. Post, who then prescribes the Plaintiff with antidepressant

17  medications such as Zoloft, Trazadone, Klonopin, and Benadryl, to treat the depression, anxiety,

18  emotional distress and pain, sleep deprivation, and insomnia that he suffered and endured and

19  which he continues to suffer and endure.

20

21  76.    As a result of Defendant San Nicolas' underlined violations collectively stated in

22  Paragraph No.s **68 thru 70**, Plaintiff has been subjected, or was caused to be subjected to a series

23  of Psychological counseling at DOC where he is frequently seen by Dr. George Kallingal, who

24  then tries to help the Plaintiff cope with the depression, anxiety, and emotional distress and pain

25  that he suffered and endured and which he continues to suffer and endure.

26
27
28

3  77.    Prior to Defendant San Nicolas' underlined violations collectively stated in Paragraph

4  No.s **68 thru 70,** Plaintiff enjoyed the benefits of his Territorially-created rights to education and

5  to a reduction of his prison sentence, numerous rehabilitation programs, numerous community

6  sports and activities, physical liberty, and numerous privileges, which every inmate in the main

7  facility of DOC cannot enjoy or benefit from because of their crimes or the laws that prohibit

8  them. As a result of Defendant San Nicolas' underlined violations collectively stated in Paragraph

9  No.s **68 thru 70**, Plaintiff was and ever since has been reclassified and housed among every

10  inmate in the main facility of DOC who cannot enjoy or benefit from the rights, privileges,

11  programs and physical liberty because of their crimes or the laws that prohibit them. It is

12  sufficiently clear that Plaintiff suffered a grievous loss and his punishment worked a fairly major

13  change in his conditions; significantly affecting his liberty. Plaintiff's segregated confinement

14  presents the type of "atypical and significant" hardship on the him in relation to the ordinary

15  incidents of prison life.

16

17  78.    As a direct and proximate cause of Defendant San Nicolas' underlined violations

18  collectively stated in Paragraph No.s **68 thru 70**, Plaintiff suffered a series of adverse

19  administrative effects, inconvenience, unfairness, and has suffered damages, including but not

20  limited to, actual pecuniary damages and actual non pecuniary damages in the form of direct and

21  indirect injury to Plaintiff's Classification Level, anxiety, ridicule, physical upset, depression,

22  insomnia, emotional distress, past-present-and future loss of monetary income, and damage to

23  career and educational progression.

24

25

26

27

28

# PRAYER FOR RELIEF

4      **WHEREFORE,** Plaintiff requests this honorable court to grant the following relief:

5 **A.**     Pending the final hearing and determination of the court in this matter, that a mandatory

6 **PRELIMINARY INJUNCTION** be issued:

7      1. Restraining each-named Defendant, their Officers, employees, agents, or subordinates

8 from impairing Plaintiff's Constitutional right to meaningful access to the courts, either directly,

9 by delaying or intercepting Plaintiff's mail or prohibiting or hindering his contact with the courts

10 or with an attorney, or indirectly, by threatening or harassing the Plaintiff in retaliation for filing

11 lawsuits and exercising his Constitutional rights; and

12      2. Ordering each-named Defendant, their Officer, employees, agents, or subordinates

13 pursuant to Chapter 3, Section 3.2.(F)&(H) and Chapter 15, Section 15.4. of Guam Executive

14 Order 94-19, and in accordance with the Supreme Court requirements in <u>Bounds v. Smith</u>, 97

15 S.Ct. 1491, 1492 (1977), to cooperate fully and execute any and all supplementary documents

16 and to take all additional actions that may be necessary and appropriate to give full force and

17 effect to allow the Plaintiff meaningful access to the courts by affording the Plaintiff:

18      a)     a reasonably time of 3-hours of law library usage each day on average from
Monday thru Friday;

20      b)     complete and unrestricted access to all adequate law library materials such as
encyclopedias, Shepard, reporters, digests, supplements, court rules and
procedures, etc..;

22      c)     equal and unrestricted access to existing word processing equipment available at
the law library, to draft and prepare presentable documents necessary for service
and filing; and

24      d)     adequate and unrestricted assistance to persons trained in the law.

25 **B.**     Issue a mandatory and a prohibitory **INJUNCTION** ordering each-named Defendant,

26 their Officers, employees, agents, or subordinates to immediately:

27      1.     Expunge Plaintiff's DHB Record in DHB Case No. DHB2003-08-100 dated

Case 1:03-cv-00040    Document 53    Filed 06/15/2005    Page 30 of 37

3   August 8, 2003, including but not limited to, any and all Informational Reports, Observation

4   Reports, Negative Reports, DHB Cases, ACC Cases, and other documents adversely used against

5   the Plaintiff, from August 8, 2003 to the execution date of this Court's order, exclusive of the day

6   of service.

7       2.      Make no further reference to those incidents mentioned in Paragraph B(1) of this

8   relief in future ACC hearings, DHB hearings, and Parole hearings.

9       3.      Disqualify or prohibit Defendant Ishizaki, Defendant Crisostomo, and Defendant

10  San Nicolas from serving on the Adjustment Classification Committee (ACC), the Disciplinary

11  Hearing Board (DHB), and the Parole Board, and from participating in any institutional function

12  which requires them individually or collectively to act in a quasi-adjudicatory capacity involving

13  the Plaintiff.

14      4.      Refrain from abridging, hindering, depriving, or violating any and all privileges,

15  immunities, and clearly established rights of the Plaintiff secured and guaranteed by the United

16  States Constitution, relevant Federal and Local Statutory Laws, relevant Case Laws, relevant

17  Guam Executive Orders, Department Policy Directives, Department Procedures, Rules and

18  Regulations.

19      5.      Required to adhere to the United States Constitution, relevant Federal and Local

20  Statutory Laws, relevant Case Laws, relevant Guam Executive Orders, Department Policy

21  Directives, Department Procedures, Rules and Regulations.

22      6.      Perform their official duties in compliance with the United States Constitution,

23  relevant Federal and Local Statutory Laws, relevant Case Laws, relevant Guam Executive Orders,

24  Department Policy Directives, Department Procedures, Rules and Regulations.

25      7.      Design, with the mandatory participation of the Plaintiff, an impartial set of policy

26  and procedures governing DHB Appeals which must be consistent with  existing relevant case

27  laws, and which must incorporate the full requirements of **Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct.**

28

3  **2963 (1974)**..

4      8.     Design, with the mandatory participation of the Plaintiff, an impartial set of policy

5  and procedures governing the Charging Process during an incident, the Investigation Stage during

6  an incident, and the Hearing, which must be consistent with existing relevant case laws, and which

7  must incorporate the full requirements of **Wolff v. McDonnell, 419 U.S. 539, 94 S.Ct. 2963 (1974).**

8      9.     Pay all Court costs and fees of this lawsuit should the Plaintiff become the

9  prevailing party.

10

11 **C.**    Issue a mandatory judgment and order for an award of **PUNITIVE DAMAGES** in the

12 sum of **$50,000.00** against Defendant Ishizaki, for subjecting the Plaintiff, or causing the Plaintiff

13 to be subjected to a series of long physical and psychological punishment in Disciplinary

14 Segregation, multiple adverse and collateral administrative effects, hardship, physical upsets,

15 unfairness, and unnecessary inconvenience, that the Plaintiff suffered and endured and which he

16 continues to suffer and endure to this very day.

17

18 **D.**    Issue a mandatory judgment and order for an award of **MENTAL ANGUISH**

19 **DAMAGES** in the sum of **$50,000.00** against Defendant Ishizaki, for subjecting the Plaintiff, or

20 causing the Plaintiff to be subjected to depression, anxiety, insomnia, sleep deprivation, and

21 emotional distress and pain, that the Plaintiff suffered and endured and which he continues to

22 suffer and endure to this very day.

23

24 **E.**    Issue a mandatory judgment and order for an award of **PUNITIVE DAMAGES** in the

25 sum of **$50,000.00** against Defendant Crisostomo, for subjecting the Plaintiff, or causing the

26 Plaintiff to be subjected to a series of long physical and psychological punishment in Disciplinary

27 Segregation, multiple adverse and collateral administrative effects, hardship, physical upsets,

28

unfairness, and unnecessary inconvenience, that the Plaintiff suffered and endured and which he continues to suffer and endure to this very day.

**F.**     Issue a mandatory judgment and order for an award of **MENTAL ANGUISH DAMAGES** in the sum of **$50,000.00** against Defendant Crisostomo, for subjecting the Plaintiff, or causing the Plaintiff to be subjected to depression, anxiety, insomnia, sleep deprivation, and emotional distress and pain, that the Plaintiff suffered and endured and which he continues to suffer and endure to this very day.

**G.**     Issue a mandatory judgment and order for an award of **PUNITIVE DAMAGES** in the sum of **$50,000.00** against Defendant San Nicolas, for subjecting the Plaintiff, or causing the Plaintiff to be subjected to a series of long physical and psychological punishment in Disciplinary Segregation, multiple adverse and collateral administrative effects, hardship, physical upsets, unfairness, and unnecessary inconvenience, that the Plaintiff suffered and endured and which he continues to suffer and endure to this very day.

**H.**     Issue a mandatory judgment and order for an award of **MENTAL ANGUISH DAMAGES** in the sum of **$50,000.00** against Defendant San Nicolas, for subjecting the Plaintiff, or causing the Plaintiff to be subjected to depression, anxiety, insomnia, sleep deprivation, and emotional distress and pain, that the Plaintiff suffered and endured and which he continues to suffer and endure to this very day.

**I.**     Issue a mandatory judgment and order for an award of **COMPENSATORY DAMAGES** in the sum of **$50,000.00** against Defendant Ishizaki, **$50,000.00** against Defendant Crisostomo, and **$50,000.00** against Defendant San Nicolas, for the loss of Plaintiff's past-present-and future

3  monetary income that he received from a Federal Grant, which also paid for the Plaintiff's College

4  tuition fees, lab fees, school books and materials, and courses at the Guam Community College in

5  Mangilao.

6

7  **J.**      Issue a mandatory judgment and order for an award of **DAMAGES** in the sum of

8  **$25,000.00** against Defendant Ishizaki, **$25,000.00** against Defendant Crisostomo, and

9  **$25,000.00** against Defendant San Nicolas, for violating the Plaintiff's procedural due process

10  rights set forth in Chapter 3 of Guam Executive Order 94-19 and in the Procedural Due Process

11  Form attached hereto to Plaintiff's declaration and marked as Exhibit "A."

12

13  **K.**      Issue a mandatory judgment and order for an award of **DAMAGES** in the sum of

14  **$25,000.00** against Defendant Ishizaki, **$25,000.00** against Defendant Crisostomo, and

15  **$25,000.00** against Defendant San Nicolas, for violating the Plaintiff's Constitutional and Civil

16  rights.

17

18  **L.**      Issue a mandatory judgment stating that the Plaintiff is entitled to a **DECLARATORY**

19  **JUDGMENT** declaring the acts of Defendant Ishizaki, Defendant Crisostomo, and Defendant

20  San Nicolas to be invalid, illegal, and in deprivation of those rights secured and guaranteed to the

21  Plaintiff and other inmates similarly situated by the United States Constitution, relevant Federal

22  and Local Statutory Laws, relevant Case Laws, relevant Guam Executive Orders, and relevant

23  promulgated rules and regulations of the Territory of Guam when:

24       1.      Defendant Ishizaki, acting under color of law, but in actual violation of the

25  Fourteenth Amendment to the United States Constitution, unreasonably and illegally deprived the

26  Plaintiff his entitled right to the full and final panoply of due process procedural protections set

27  forth in Guam Executive Order 94-19 and in the Procedural Due Process Form attached hereto to

28

Plaintiff's declaration and marked as Exhibit "A," both of which were published and promulgated for his guidance and benefit and which must be followed before his Territorially-created rights could be taken away from him. And additionally, when Defendant Ishizkai failed adequately to provide Plaintiff with a written statement as to the specific evidence relied upon and the reasons for the disciplinary action, which also resulted from depriving the Plaintiff his entitled rights mentioned above.

2.    Defendant Ishizaki, acting under color of law, but in actual violation of the Fourteenth Amendment to the United States Constitution, unreasonably and illegally failed to provide the Plaintiff with an answer to his DHB Appeal within 15 business days, which the Plaintiff and other inmates similarly situated were previously provided when they filed their DHB Appeals. And additionally, when Defendant Ishizaki failed to exonerate the Plaintiff and return him back to the Halfway Housed after failing to provide the Plaintiff with an answer to his DHB Appeal within 15 business days, which previous and present DOC Directors or Acting Directors and Assistant Attorney General James T. Mitchell had previously done for all inmates, including the Plaintiff, whose DHB Appeals were not answered within 15 business days.

3.    Defendant Crisostomo, acting under color of law, but in actual violation of the Fourteenth Amendment to the United States Constitution, unreasonably and illegally deprived the Plaintiff the assurance of safety and the same treatment and protection which Defendant Crisostomo has given other inmates similarly situated who had conflict of interest with a Corrections Officer, or other inmates, by transferring the Plaintiff into the hands of his conflict and thus, placing him in a vulnerable position which would befall him.

4.    Defendant San Nicolas, acting under color of law, but in actual violation of the Fourteenth Amendment to the United States Constitution, unreasonably and illegally deprived and hindered the Plaintiff's right to and impartial decision maker, his right to be treated fairly and impartially, and his right to present evidence on his own behalf, by having direct personal

3 | involvement and knowledge and participating in every stage of proceeding in the Plaintiff's DHB

4 | Case, and by sitting in judgment of his own complaint and charges and arriving at a decree of

5 | prejudgment against the Plaintiff.

6 |

7 | **M.**     Grant such other relief as this Court deems appropriate and equitable and as it may appear

8 | the Plaintiff is entitled to as a matter of law and right.

9 |

10 | **DATED** this _6th_ day of _JUNE_____, 2005.

11 |                                                      Respectfully Submitted,

12 |

13 |                                         Michael Jr. G. Laguana, *pro se.*

14 |                                         **Department of Corrections**
          **Dairy Road, Mashburn Lane**

15 |                                         P.O. Box 3236
          Hagåtña, Guam 96932

16 |                                         Tel: (671) 734-3981 thru 9
          **Adult Correctional Facility**

17 |

18 |                    # VERIFICATION

19 |

20 |          I *Michael Jr. G. Laguana*, declare under Penalty of Perjury that the foregoing is true
   and correct.

21 | EXECUTED on _JUNE 6_____, 2005.

22 |

23 |                                         Michael Jr. G. Laguana, *pro se.*

24 |

25 |

26 |

27 |

28 |

Page 36 of 36

# PROOF OF SERVICE (CERTIFICATE OF SERVICE)

I, **MICHAEL JR. G. LAGUANA**, Plaintiff appearing Pro Se, hereby certify that I have served a true and correct filed copy of:

# AMENDED COMPLAINT

upon Defendants' Counsel ***James T. Mitchell*** and addressed same to:

> **James T. Mitchell, Counsel for the Defendants,**
> **Office of the Attorney General**
> **Civil Division**
> Guam Judicial Center, Suite 2-200E
> 120 West O'Brien Drive
> Hagåtña, Guam 96910   USA
> **(671) 475-3324      (671) 472-2493 (Fax)**

by delivering same for the above-named Counsel for the Defendants at the Office of the Attorney General, Guam Judicial Center, Suite 2-200E, 120 West O'Brien Drive in Hagåtña, Guam on this _6th_ day of _JUNE_, 2005.

I declare under Penalty of Perjury that the foregoing is true and correct.

**DATED** this _6th_, day of _JUNE_, 2005.

By: _____
**Michael Jr. G. Laguana, Pro Se,**
Of
**Department of Corrections**
**Dairy Road, Mashburn Lane**
P.O. Box 3236
Hagåtña, Guam 96932
Tel: (671) 734-3981 thru 9
**Adult Correctional Facility**

*Laguana vs. Ishizaki, CV-03-00040*
**PROOF OF SERVICE**

Case 1:03-cv-00040    Document 53    Filed 06/15/2005    Page 37 of 37