Michael Jr. G. Laguana, Pro Se,
Department of Corrections
Dairy Road, Mashburn Lane
P.O. Box 3236
Hagåtña, Guam 96932
Tel: (671) 734-3981 thru 9
Adult Correctional Facility

# UNITED STATES DISTRICT COURT
## DISTRICT COURT OF GUAM
### *TERRITORY OF GUAM*

| | |
|---|---|
| Michael Jr. G. Laguana,<br>　　　　Plaintiff,<br>　　vs.<br>Frank Ishizaki, Director;<br>Francisco B. Crisostomo, Warden;<br>Alan San Nicolas, Corporal; at the<br>Guam Department of Corrections, in their<br>individual and official capacities,<br>　　　　Defendants. | Civil Case No.: **CV-03-00040**<br><br>**DECLARATION OF**<br>**MICHAEL JR. G. LAGUANA** |

I, **Michael Jr. G. Laguana**, being first duly sworn, depose and say:

### I.

I am the Plaintiff in the above-entitled action, and I hereby make this Declaration in support of my Opposition to the Defendants' Motion To Dismiss Amended Complaint.

### II.

The following facts are relevant to the issue involved in the above-entitled action and are known by me to be true, of my own personal knowledge. I am competent to testify to such facts, and would so testify if I appeared in court as a witness at the trial of the matter.

1. Prior to being removed from the Halfway House on August 5, 2003 for alleged misconduct, I lived freely at the Halfway House in a civilian-oriented residential environment with no prison bars and fences, no barbed-wires and mechanical restraints, and with no prison security mechanisms of any type. While living at the Halfway House:

(a) I liberally and physically enrolled and participated in College education courses at the Guam Community College in Mangilao, where I spent approximately 6 hours each day on average in class and in computer lab classes which I nonetheless attended with both female and male civilian students. I was capable of earning and actually earning approximately $4,000.00 per College Semester year and a monetary income check of approximately $400.00 twice every Semester after a deduction for lab and tuition fees, books and other educational expenses;

(b) I liberally and physically worked at the Guam Civil Defense Office Agana Heights and at various parks, beaches, and public places around the Island of Guam. I was capable of earning and actually earning 01 day off my prison sentence for every 40 hours of work;

(c) I wore civilian clothing everyday to include accessories such as jewelry, sunglasses, hats, and a wristwatch;

(d) I had the privilege of having $50.00 in U.S. Currency in my possession for spending, and the privilege to have my own personal property which consisted of items (purchased by my family) ranging from a variety selection of civilian clothing and footwear to named brand hygiene items, a motorola pager, a wallet, jewelry,, kitchen utensils, art supplies, recreational and educational materials, canned food, 50lb sack of rice and frozen foods;

(e) I had the privilege to physically go home to my family once-a-month unsupervised and unescorted;

(f) I liberally and physically participated in public Softball Tournaments and in other recreational activities held at various Softball fields and gyms around the Island of Guam;

(g) I liberally and physically went to parties and Bar-B-Ques that were held at various

Elementary Schools, public parks and beaches, Village Mayor Offices, and at various Offices of government agencies around the Island of Guam:

(h) I had access to 7 days-a-week contact visitation during which I was able to eat lunch and/or dinner with my family, which I nonetheless enjoyed home-cooked meals and/or fast food restaurant meals like Mc Donalds, Taco Bell, Burger King, Pizza Hut, and Kentucky Fried Chicken;

(i) I had access to 24-hour telephone usage;

(j) I had access to 24-hour television viewing;

(k) I had 24-hour access to kitchen utensils such as steel knives, forks, spoons, cleavers, pots and pans, etc.;

(l) I had 24-hour access to a kitchen with a gas stove where I cooked my own meals, be it during the day or late at night or in the early morning hours;

(m) I had 24-hour access to the exercise facilities of the Halfway House such as the weight room area and the yard;

(n) I had 24-hour access to a computer that had a numerous selection of computer games, microsoft programs, and other software programs;

(o) I had 24-hour access to home entertainment equipment such as a home stereo system, a DVD player with DVD movies and music CDs, a VCR player with movie videos, a portable radio, and a Play Station home video arcade player with numerous game video CDs;

(p) I had 24-hour access to showers;

(q) I had my own residential bedroom furnished with an air condition and floor shelves/drawers, which I shared with one other fellow Halfway House inmate. I had the opportunity to enjoy privacy in my own residential bedroom;

Laguana v. Ishizaki, et. al., CV-03-00040,
**DECLARATION OF**
**MICHAEL JR. G. LAGUANA**
Page 4

    (r)    I had access to community religious programs. I physically participated in community religious programs such as a retreat which was held at the Guam Ladera Towers Hotel in Mangilao, where I spent approximately 20 hours each day for 3 days. I shared a hotel room with female and male civilians.

2. The vocational, educational, recreational, religious, and rehabilitative rights, privileges and/or programs listed above in (a) to (r) of Paragraph 1 can only be obtained or given at the Halfway House.

3. When I was removed from the Halfway House on August 5, 2003 for alleged misconduct, I was transferred back in to the main prison facility of DOC where I was placed on Pre-Hearing Detention from August 5, 2003 to August 8, 2003. While I was confined in Pre-Hearing Detention, I had no access to vocational, educational, recreational, religious, and rehabilitative rights, privileges and programs as I would have had while out in the Halfway House. I was confined to a dry cell that was small and very humid with inadequate ventilation, where I spent my entire time alone with the exception of one-hour each day on average for fresh air which I nonetheless remained isolated from other inmates. Showers were only once a day. Confinement to Pre-Hearing Detention imposed severe hardships on me and effected a major change in my conditions.

4. On August 8, 2003, I was sanctioned by the Disciplinary Hearing Board to serve 30 days in disciplinary segregation at the main prison facility of DOC. While I was confined in disciplinary segregation for 30 days, I had no access to vocational, educational, recreational, religious, and rehabilitative rights, privileges and/or programs as I would have had while out in the Halfway House. I was confined to a small and very humid cell with inadequate ventilation, where I spent my entire time alone with the exception of one-hour each day on average for fresh air which I nonetheless

Page 4 of 5
Case 1:03-cv-00040   Document 68   Filed 08/30/2005   Page 4 of 6

remained isolated from other inmates and constrained unconstitutionally by leg irons. Confinement to disciplinary segregation imposed severe hardships on me and effected a major change in my conditions.

5.  After serving 30 days in disciplinary segregation at the main prison facility of DOC, I was severely demoted two levels down in Classification. From August 5, 2003 to this very day, I have been confined in the extreme environment of the main prison facility at DOC. I am unconstitutionally confined in the Maximum Security Unit inside the main prison facility of DOC. In the extreme restricted environment of the maximum security unit, I have no access to vocational, educational, recreational, religious, and rehabilitative rights, privileges and/or programs as I would have had while out in the Halfway House. I am unconstitutionally confined 24-hours a day to a small and very humid cell with inadequate ventilation, where I spend my entire time alone with the exception of 30 minutes every other day for fresh air which I nonetheless remain isolated from other inmates and constrained unconstitutionally by leg irons.

DATED this 24th day of August, 2005.

# **VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** on this 24th day of August, 2005.

Respectfully Submitted,

_____
Michael Jr. G. Laguana, pro se.
Of
**Department of Corrections
Dairy Road, Mashburn Lane**
P.O. Box 3236
Hagåtña, Guam 96932
Tel: (671) 734-3981 thru 9
**Adult Correctional Facility**

# PROOF OF SERVICE
## (CERTIFICATE OF SERVICE)

I, **MICHAEL JR. G. LAGUANA**, Plaintiff appearing Pro Se, hereby certify that I have served a true and correct filed copy of:

# DECLARATION OF MICHAEL JR. G. LAGUANA

upon Defendants' Counsel *James T. Mitchell* and addressed same to:

**James T. Mitchell, Counsel for the Defendants,**
**Office of the Attorney General**
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 USA
(671) 475-3324 (671) 472-2493 (Fax)

by delivering same for the above-named Counsel for the Defendants at the Office of the Attorney General, Guam Judicial Center, Suite 2-200E, 120 West O'Brien Drive in Hagåtña, Guam on this 24th day of August, 2005.

I declare under Penalty of Perjury that the foregoing is true and correct.

**DATED** this 24th, day of August, 2005.

By: _____
Michael Jr. G. Laguana, pro se.
**of**
**Department of Corrections**
**Dairy Road, Mashburn Lane**
P.O. Box 3236
Hagåtña, Guam 96932
Tel: (671) 734-3981 thru 9
**Adult Correctional Facility**

*Laguana vs. Ishizaki, CV-03-00040*
**PROOF OF SERVICE**